JAMES E. BROWN *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellees, v. WILLIAM MURPHY, Director of the Department of Mental Health and Developmental Disabilities, *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—93—0706

Opinion filed March 29, 1996.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of counsel), for appellants.

Mark J. Heyrman, of Chicago, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs, James E. Brown and Joseph Radaszewski, individually and on behalf of a class of other similarly situated individuals in the custody of the Illinois Department of Mental Health and Development Disabilities (hereinafter Department), filed this action in the circuit court of Cook County, against defendants, William Murphy, the Director of the Department, and Roalda J. Alderman, the facility director at Elgin Mental Health Center (hereinafter Center), seeking to enjoin defendants from acting as plaintiffs' representative payee of social security benefits without their informed consent. This issue is one of first impression. In addition, plaintiffs seek the implementation of a procedure to determine whether a patient is competent to give informed consent. Plaintiffs filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1994))). The circuit court granted the motion and issued an injunction ordering defendants: (1) to conduct a competency determination prior to obtaining a patient's informed consent to act as his representative payee; (2) to inform the patients of all the choices they have in naming a representative payee; and (3) to provide the patient with information about the provisions of 42 U.S.C. § 407 (1988). Defendants filed a motion to stay, which the court denied. It is from the orders granting the injunction and plaintiffs' summary judgment that defendants now appeal to this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we affirm and remand.

## FACTUAL BACKGROUND

Plaintiffs filed this class action suit in the circuit court on March 5, 1991. Count I of the complaint alleges that while Brown and Radaszewski were patients at the Center, they were recipients of social security disability benefits. Brown and Radaszewski claim that Alderman (or the Department) was designated as their representative payee without their informed consent. Count II of the complaint alleges that prior to becoming his representative payee, the Director of the Department failed to determine whether Brown was competent to give informed consent.

Both named plaintiffs were admitted into the Center, thus becoming eligible to receive social security disability benefits pursuant to 42 U.S.C. § 423 (1988), which provides benefits to workers during periods of mental and/or physical disability. Brown was admitted on July 3, 1984, and discharged on November 26, 1986. The Department was Brown's representative payee, collecting his social security disability benefits from early 1985 until November 26, 1986. Brown was readmitted in June of 1987 and once again consented to having the Department act as his representative payee beginning September 1987. On May 25, 1990, the Department resigned as Brown's representative payee. Radaszewski, the other named plaintiff, was admitted on September 16, 1987, and the Department was designated his representative payee in February of 1990 until March 6, 1990, when it resigned. Plaintiffs requested that the circuit court enter an injunction restraining defendants from becoming a representative payee of their social security disability benefits in the absence of informed consent. Plaintiffs further requested that defendants implement procedures for determining a patient's competency to give informed consent to defendants acting as a representative payee.

On October 4, 1991, defendants filed a motion to dismiss plaintiffs' action based on mootness as the Center was no longer the representative payee of either Brown or Radaszewski, and Brown was no longer a patient there. In addition, defendants argued that on February 28, 1990, the Department revised its policies and procedures for obtaining a patient's informed consent prior to becoming a representative payee. The circuit court, however, denied the motion on the grounds that the mootness doctrine does not apply in mental health cases.

On January 23, 1992, plaintiffs filed a motion for certification of the class, consisting of "all patients at [the Center] who are receiving or who are eligible for, Social Security disability benefits and/or Veteran's Benefits." The circuit court certified the class on April 24, 1992, over defendants' objections.

On July 24, 1992, plaintiffs moved for summary judgment. On September 1, 1992, defendants filed a cross-motion for summary judgment. Angelo Campagna, the current acting director for the Center at this time, submitted an affidavit explaining the policies and procedures used when obtaining informed consent from a recipient of social security benefits. Campagna stated that the director of the Center must receive a recipient's written informed consent prior to becoming a representative payee pursuant to the Department's Administrative Directive 01.24.05.02, which was incorporated into the Department's policies and procedures manual on February 28, 1990.

Under the new regimen, when obtaining a recipient's informed consent, Department officials inform the recipient that: (1) the availability of Department services is not conditioned upon his consent to appoint the Director as his representative payee; (2) the representative payee shall make disbursements for treatment service charges and for the purchases of essential living items and will manage the recipient's money in his best interest; (3) the recipient may revoke the authorization at any time; and (4) a written informed-consent form must be signed. If a resident is not capable of giving informed consent, a legal guardian or a court-appointed guardian will have the power to consent on his behalf. The parties dispute whether the Center discloses to the patients all *material* information needed to make an informed decision, since the Center currently does not inform patients that their social security benefits are not subject to attachment or garnishment.

The Center issued regulations and procedures to determine a patient's competency. It is undisputed by the parties that competency must be determined before informed consent can be given. The procedures provide that when a resident is admitted to the Center, he is examined by a physician, who determines his mental and legal status. At this point, the physician finds if the resident is capable of giving informed consent for treatment. If the physician concludes that the resident is incapable of doing so, then the procedure continues. Within 72 hours of a resident's admission, a comprehensive psychiatric evaluation is performed on each resident to determine the resident's legal status. If the psychiatrist concludes that he is incapable of giving informed consent, or is in need of a legal guardian, the Center will not accept the recipient's authorization to act as a representative payee. Within 10 days of admission, each resident is given a psychological assessment by a psychologist to determine the resident's level of functioning and the resident's ability to give informed consent. Moreover, an interdisciplinary treatment team

consisting of psychiatrists, psychologists, social workers and nurses assesses the resident's understanding and capacity to make financial and personal decisions. If a resident is incapable of giving informed consent, the guardianship coordinator at Elgin processes a referral for a guardian.

The circuit court subsequently granted plaintiffs' motion for summary judgment, while it denied defendants' motion. On January 29, 1993, the trial court issued an injunction judgment order against defendants. It found that defendants failed to obtain the "informed consent" before becoming the representative payee of recipients of social security disability benefits in violation of section 2—105 of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1991, ch. 91$^1$/$_2$, par. 2—105 (now 405 ILCS 5/2—105 (West 1994))). Thus, the court entered an injunction: (1) prohibiting the Center from obtaining consents to become a representative payee unless a competency determination is made first; (2) informing the recipients that other individuals could act as a representative payee; and (3) ordering defendants to inform plaintiffs of the provision that prohibits encumbering benefits to pay the recipient's debts (42 U.S.C. § 407 (1988)). The court also found that defendants denied plaintiffs due process of law as guaranteed by the United States and Illinois Constitutions.

On February 18, 1993, the circuit court denied defendants' request for a stay of the order pending appeal. It is from this order and the order granting plaintiffs' summary judgment motion that defendants now appeal to this court.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendants argue that the circuit court: (1) erroneously certified the class; (2) erred in its construction of the "informed consent" provision in section 2—105 of the Code (Ill. Rev. Stat. 1991, ch. 91$^1$/$_2$, par. 2—105 (now 405 ILCS 5/2—105 (West 1994))); (3) erred in its interpretation of the applicable social security regulations; (4) erred in finding that the procedure used by defendants to become the representative payee violated plaintiffs' due process rights as guaranteed by the United States and Illinois Constitutions; and (5) abused its discretion in granting injunctive relief.

## OPINION

Defendants initially urge that this appeal is moot. Defendants argue that no controversy exists since Brown is no longer a resident of the Center and defendants no longer act as plaintiffs' representative payee. We disagree.

In *HealthChicago, Inc. v. Touche, Ross & Co.*, 252 Ill. App. 3d 608, 610, 625 N.E.2d 706 (1993), this court held:

"It is a well-recognized principle of law that a reviewing court will decide only actual controversies in which the interests or rights of the parties to the litigation can be granted effectual relief. [Citation.] An appeal becomes moot when a court can no longer effect the relief originally sought by an appellant or when the substantial question involved in the trial court no longer exists. [Citation.] When a case is rendered moot, a court's decision on the merits cannot afford either party relief and any decision thus reached is merely an advisory opinion." *HealthChicago*, 252 Ill. App. 3d at 610.

However, Illinois courts have generally not applied the mootness doctrine to mental health cases (*In re Garcia*, 59 Ill. App. 3d 500, 375 N.E.2d 557 (1978)), and exceptions to the doctrine exist "[(1)] where a mootness ruling would eliminate an entire class of cases from appellate review [citation]; and [(2)] where there are collateral legal consequences which survive the expiration of the order under review [citation]." *In re Sciara*, 21 Ill. App. 3d 889, 893-94, 316 N.E.2d 153 (1974); see also *In re Meek*, 131 Ill. App. 3d 742, 476 N.E.2d 65 (1985); *In re Cochran*, 139 Ill. App. 3d 198, 487 N.E.2d 389 (1985).

Illinois courts have also recognized an exception to the mootness doctrine when a case presents an issue of substantial impact on the public interest. *Madison Park Bank v. Nagel*, 91 Ill. 2d 231, 437 N.E.2d 638 (1982). "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622, 104 N.E.2d 769 (1952), *cert. denied*, 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24 (1952).

■ For two separate and independent reasons, we find the mootness doctrine inapplicable to the case *sub judice*. First, we believe that due to the fact that commitment to a mental institution is generally indeterminate, a mootness ruling in this case would eliminate this class of cases from appellate review. Thus, we believe the mental health exception to the mootness doctrine apropos to this case.

Aside from the mental health exception, we find that the public interest exception to the mootness doctrine is applicable to this case in that the three criteria of *Labrenz* are met. First, we find that there is a significant public interest in how patients in this state's mental hospitals are being treated and how their money is being safeguarded for them. Second, we believe it desirable that authoritative determination of this question exists for the future guidance of public officers. Third, we believe that there is a likelihood of future recurrence of

this question. That said, we now turn to the substantive issues of the case.

Defendants argue that summary judgment was improperly entered against them. "The purpose of the summary judgment procedure is to permit the court to determine if there is any genuine issue of fact, but not to allow the court to decide factual issues." *Kobus v. Formfit Co.*, 35 Ill. 2d 533, 538, 221 N.E.2d 633 (1966). The underlying policy is to facilitate litigation, to avoid congestion of trial calendars, and reduce unnecessary trials. *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 586, 272 N.E.2d 497 (1971). Summary judgment motions should be granted only when the right of the moving party is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986). In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240. The appellate court, like the trial court, determines whether there is a genuine issue of material fact under a *de novo* standard of review. *Demos v. National Bank of Greece*, 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083 (1991).

We began our analysis by addressing defendants' first contention, that the circuit court abused its discretion in certifying the class. Defendants argue that the named plaintiffs do not fairly and adequately represent the interest of the class. Defendants claim that Brown is no longer a resident of the Center nor are defendants acting as plaintiffs' representative payee. Defendants, therefore, conclude that the trial court abused its discretion. We disagree.

■ Pursuant to section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—801 (now 735 ILCS 5/2—801 (West 1994))), four requirements must be met in order to certify a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any question affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Ill. Rev. Stat. 1989, ch. 110, par. 2—801 (now 735 ILCS 5/2—801 (West 1994)); *Gordon v. Boden*, 224 Ill. App. 3d 195, 199, 586 N.E.2d 461 (1991).

In deciding whether to certify a class, a court may consider "any matters of fact or law properly presented by the record, including the pleadings, depositions, affidavits, answers to interrogatories and any evidence that may have been adduced at hearings. *Gordon*, 224 Ill.

App. 3d at 199, quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 100, 484 N.E.2d 349 (1985). Certification of a class is within the sound discretion of the trial court, and such determination will be disturbed on review only if there is an abuse of discretion or if impermissible legal criteria are applied. *Haywood v. Superior Bank FSB*, 244 Ill. App. 3d 326, 328, 614 N.E.2d 461 (1993).

■ In the instant case, defendants only challenge the third requirement, whether the named plaintiffs will fairly and adequately protect the interest of the class. Both Brown and Radaszewski were admitted due to their mental illnesses. At the time of this action, Brown was not a resident at the Center. However, the record shows that Brown has been hospitalized on and off for the last 10 years. Clearly, this demonstrates the nature of mental illnesses, where patients may normally be readmitted and redischarged numerous times, in accordance with their health and progress. Brown and Radaszewski adequately represented the class of all eligible patients who receive or are eligible to receive benefits. Accordingly, we conclude that the trial court did not abuse its discretion in certifying the class.

Next, defendants contend that the circuit court erroneously found that the Department violated section 2—105 of the Code (section 2—105) (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 2—105 (now 405 ILCS 5/2—105 (West 1994))) based on two grounds: (1) that defendants failed to disclose and discuss sufficient information with patients to allow them to make an informed consent; and (2) that defendants failed to determine whether the recipients are competent to provide informed consent when defendants obtain the authorization to act as payee. Plaintiffs maintain that sufficient information is needed to give informed consent for the Department to act as payee. This would include a disclosure by officials of 42 U.S.C § 407 (1988), which provides that a recipient's social security disability benefits cannot be attached or garnished to pay treatment charges of an institution. Defendants postulate that "there is no reason to conclude that a prudent person, knowing that the Social Security benefits could not be attached, would have made a different decision regarding the representative payee." In addition, defendants maintain that the information disclosed to all patients is sufficient as a basis for an informed decision. We disagree.

■ Under the Social Security Act (Act), the Federal Social Security Administration promulgates formal agency regulations which are codified at 20 C.F.R. §§ 404.2001 through 404.2065, and 416.601 through 416.665 (1990). The Act authorizes the award of disability

benefits to an individual who has a mental or physical impairment which prevents him or her from working (42 U.S.C. § 401 *et seq.* (1988)). The Act states that these benefits are to be paid directly to the individual deemed eligible to receive them (42 U.S.C. § 405(j) (1988)). However, in cases in which the Secretary of the Department of Health and Human Services determines that a recipient of benefits is unable to manage his own benefits, or it is otherwise in "the interest of an applicant entitled to a payment," the Secretary can make the benefits payments to a representative payee (42 U.S.C. § 405(j) (1988)).

■ The principles and procedures at 20 C.F.R. § 404.2001 *et seq.* (1990) explain when to allow representative payment and how to select a representative payee. A representative payee is necessary where a recipient of benefits is legally incompetent or mentally incapable of managing benefit payments (20 C.F.R. § 404.2010 (1990)), and the payee should "best serve the interest of the beneficiary" (20 C.F.R. §·404.2020(a) (1990)). A payee may include a public or private institution that has custody of the beneficiary (20 C.F.R. § 404.2021(4) (1990)). The payee has the responsibility to use payments for the benefit of the beneficiary in his best interests (20 C.F.R. § 404.2035 (1990)). This includes using the payments for current maintenance, such as food, shelter, clothing, medical care and personal comfort items (20 C.F.R. § 404.2040 (1990)).

We find that under the social security regulations, plaintiffs can properly choose the Center as their representative payee, as long as it will best serve the beneficiary's interest (20 C.F.R. § 404.2021 (1990)). Thus, the relevant inquiry is not whether the Center can act as plaintiffs' representative. Rather, the central concern is whether plaintiffs gave their informed consent prior to the Center being designated as their representative payee.

■ Before we consider what exactly is meant by informed consent, we must examine the threshold question of whether the individual is competent to give informed consent. Section 2—101 of the Code contains an express provision that no recipient of Department services is legally disabled except as determined by the courts. Section 2—101 provides as follows:

> "No recipient of services shall be presumed legally disabled, nor shall such person be held legally disabled except as determined by a court. Such determination shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission or meets the standard for judicial admission." Ill. Rev. Stat. 1991, ch. 91½, par. 2—101 (now 405 ILCS 5/2—101 (West 1994)).

Based upon this statutory presumption, defendants erroneously assume that a recipient of Department services is presumed competent to give informed consent unless proven otherwise. We do not believe this is so. This statute clearly provides that no one shall be presumed incompetent. Thus, a presumption against incompetence is not a presumption of competence. Defendants must carefully determine the competency of a patient who has been involuntarily committed to a mental health institution.

■ Defendants instituted multistep procedures to determine the recipient's competence, as only competent persons can give informed consent. Upon admittance, a physician examines the patient to determine his mental and legal status. Within 72 hours of the admission, a psychiatrist completes a comprehensive psychiatric evaluation of the resident to determine his legal status and ability to give an informed decision. Within 10 days of admission, each resident is given a psychological assessment by a psychologist to evaluate his mental status. Finally, each patient has an interdisciplinary treatment team which assesses the patient's capacity to make financial and personal decisions. The staff examining the patient can, at any time, initiate procedures for the appointment of a legal guardian.

These procedures go to determining whether a patient needs a legal guardian. If the patient needs a legal guardian, then clearly he is incompetent to give informed consent to have defendants act as his representative payee. However, it does not logically follow that an individual not in need of a guardian is *ipso facto* competent to give consent to defendants acting as his representative payee. It is this latter group which we focus on. We believe that defendants must still determine whether they are competent to give informed consent. Thus, we find that the procedures here do not fully determine the competency of a recipient that falls into this latter category and remand this cause for further proceedings.

■ Now, we turn to what exactly is meant by informed consent. This issue is one of first impression in Illinois. Section 2—105 provides, in pertinent part:

"Except where a recipient has given informed consent, no service provider nor any of its employees shall be made representative payee for his social security, pension, annuity, trust fund, or any other form of direct payment or assistance." Ill. Rev. Stat. 1991, ch. 91½, par. 2—105 (now 405 ILCS 5/2—105 (West 1992)).

Generally, informed consent is consent given by a competent person after that person "has received a fair and reasonable explanation of the contemplated treatment or procedure." 61 Am. Jur. 2d *Physician, Surgeons & Other Healers* § 187, at 317 (1981). The meaning of

informed consent was developed in medical malpractice case law, and thus we look to this field to understand the term. In *Cantebury v. Spence*, 464 F.2d 772 (D.C. Cir. 1972), the court held that informed consent is that given by a reasonable person who receives sufficient information to make an intelligent choice, and it is up to reasonable health care professionals to determine the sufficiency of such evidence. *Cantebury*, 464 F.2d at 780. In addition, the *Cantebury* court held that in a malpractice suit, "there must be a casual relationship between the physician's failure to adequately divulge and damage to the patient." *Cantebury*, 464 F.2d at 790.

In the case *sub judice*, the trial court extrapolated three basic concepts from *Cantebury* it believed comprised the requisite foundation for informed consent. The recipient: (1) must have adequate information with which to form a reasonable decision in his best interest; (2) must be reasonably competent and able to evaluate all available options and choices; and (3) must have competence to evaluate the risks or consequences in the various options available to him to reach his informed consent or denial. We agree with the trial court's definition of informed consent.

Having defined informed consent, we now examine what constitutes informed consent in this particular case. At issue is whether defendants must disclose and discuss section 407(a) of the Social Security Act (section 407(a)) (42 U.S.C. § 407(a) (1988)) in order to appropriately obtain plaintiffs' informed consent. Section 407(a) states that none of the social security disability benefits "shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law" (42 U.S.C. § 407(a) (1988)). Even though "[a]n institution may itself be a payee ***, the regulations do not impose any particular safeguards against abuse by institutional payees and advocates have complained that institutional charges, in addition to not being in the best interest of the beneficiary, often amount to charging fees for services or an illegal garnishment." P. Komlos-Hrobsky, *Representative Payee Issues in the Social Security and Supplemental Security Income Programs*, 23 Clearinghouse Rev. 412, 416 (1989). Recently, the appellate court held that section 407(a) imposes a broad bar against the use of any legal process to reach all social security benefits and gives wide discretion to a representative payee to use funds in the best interests of the beneficiary, not the State. *In re Estate of Merritt*, 272 Ill. App. 3d 1017, 651 N.E.2d 680 (1995). Although the social security regulations consider payments to a state institution proper usage of social security benefits, the language of the regulations is *permissive*, not mandatory. *Merritt*, 272 Ill. App. 3d at 1021.

■ We find that defendants do not provide the recipients sufficient information with which to make an informed decision because defendants do not disclose section 407(a). Thus, defendants are in violation of section 2—105. Currently, the Department officials explain to the recipient that (1) the availability of Department services is not conditioned upon the execution of the authorization; (2) the representative payee will make disbursements for treatment service charges and for the purchases of essential living items and will manage the recipient's money in his best interest; and (3) the recipient can remain as his own payee and may revoke the authorization making the Director the payee at any time. This information is proper and a good starting point. However, the Department officials never reveal to the recipients that if they choose someone else as their payee, the payee will not necessarily have to use their benefits to pay for their treatment. The recipients have the right to know that their benefits are "special money" and cannot be garnished or attached by the Center. Yet, we are not saying that plaintiffs and other recipients are not liable for the debt they incur while hospitalized at the Center or any other mental institution. Patients would still be liable for all the treatment charges incurred. Rather, we are articulating that plaintiffs have the right to have all material information disclosed to them, which includes the disclosure of section 407(a). We find that plaintiffs cannot give informed consent without knowledge of the provision in section 407(a). Accordingly, we affirm the trial court's decision and remand this cause for further proceedings not inconsistent with the views contained herein.

Still to be considered is defendants' third argument, which addresses whether the circuit court incorrectly determined that defendants' actions violated the social security regulations for representative payment. In light of our disposition of the previous issue, we need not reach this question. Similarly, we shall not address the issue of whether plaintiffs' federal and state constitutional rights were violated.

Lastly, defendants submit that the circuit court erred in granting injunctive relief because plaintiffs did not establish the necessary elements for an injunction. Specifically, defendants argue that if defendants improperly used plaintiffs' social security benefits, plaintiffs could have easily and accurately calculated the amount owed to them. Defendants, thus, conclude that there is no irreparable harm in this instance. In addition, defendants claim that plaintiffs had an adequate remedy at law since they could have addressed their complaint to the Illinois Court of Claims.

An injunction, whether preliminary or permanent, is an extraor-

dinary remedy, the use of which is limited to those instances where the remedy at law is inadequate and serious irreparable harm would result without immediate relief. *Sadat v. American Motors Corp.*, 104 Ill. 2d 105, 115, 470 N.E.2d 997 (1984). A party must establish, through well-pled facts, that: (1) he possess a clearly ascertainable right or protectable interest which will suffer irreparable damage in the absence of relief, and (2) he has an inadequate remedy at law. *McMann v. Pucinski*, 218 Ill. App. 3d 101, 578 N.E.2d 149 (1991). Specifically, "[a]n adequate remedy at law is one which is clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *Cross Wood Products, Inc. v. Suter*, 97 Ill. App. 3d 282, 286, 422 N.E.2d 953 (1981). Although an injunction is an extraordinary remedy, a circuit court has broad discretionary powers to grant an injunction. *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 189, 542 N.E.2d 408 (1989). A reviewing court will only overturn a circuit court's grant of an injunction where there has been a manifest abuse of discretion. *Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 885, 608 N.E.2d 1274 (1993).

In the case *sub judice*, we believe that plaintiffs met both elements needed for the issuance of an injunction and that the circuit court did not abuse its discretion. We find that they suffered an irreparable harm from the deprivation of their only source of income, and no adequate remedy at law existed. Plaintiffs, while in the care of a mental institution, have their essential needs taken care of. However, once discharged from the Center into the community, it is conceivable that plaintiffs have little or no shelter, and may be unable to secure food, clothing, medication or other necessities of life, which clearly would create an irreparable harm. Plaintiffs may have many valid uses for their benefits, beyond merely paying for the cost of their treatment. Equitable relief is vital here in order to protect a class that may be indigent, would have difficulty bringing suits, and have difficulty understanding the harms done to them. Often, mentally ill persons never fully recover from their illnesses. They may only be stabilized for short intervals of time and cyclically continue to be hospitalized. This makes it highly unlikely that they would ever be sufficiently capable of pursuing a remedy in the Court of Claims. We conclude that the trial court did not abuse its discretion and, therefore, the granting of injunctive relief was proper.

In light of the foregoing, the judgment of the circuit court of

Cook County is affirmed and remanded for further proceedings not inconsistent with the views contained herein.

Affirmed and remanded.

RIZZI, P.J., and GREIMAN, J., concur.