(No. 90-CC-2246– )

ADDIE JONES, Claimant, *v.* ILLINOIS DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Respondent.

*Opinion filed February 18, 1998.*
*Opinion on rehearing filed April 3, 2000.*

LEGAL ASSISTANCE FOUNDATION OF CHICAGO (ANDREW COHEN, of counsel), for Claimant.

JIM E. RYAN, Attorney General (TOMAS A. RAMIREZ, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, J.

This cause comes to be heard on cross-motions for summary judgment filed by the parties, due notice having been given, and this Court being fully advised, finds that the issues involved in this claim are identical to those in

*Radaszewski v. State* (1998), No. 91-CC-1076, (unpublished, see 51 Ill. Ct. Cl. 407). In the *Radaszewski* claim, which was orally argued before the Court and briefed, this Court found in a detailed opinion that there was no damage to the Claimant and, thus, the Respondent's motion for summary judgment was granted and the claim was dismissed.

It is therefore ordered that the Respondent's motion for summary judgment is granted and this claim is dismissed.

## OPINION ON REHEARING

EPSTEIN, J.

This 1990 claim for repayment of $13,371.42 of the Claimant's 1987-88 social security benefits that were remitted to the Department of Mental Health and Developmental Disabilities (DMHDD), which then paid them to itself to reimburse part of the Respondent's charges for Claimant's care and treatment at the Elgin Mental Health Center (ELGIN MHC), is back before us for the third and last time.

### Posture of this Claim

We previously denied this claim on cross-motions for summary judgment, relying on *Radaszewski v. State* (1998), No. 91-CC-1076 (unpublished, see 51 Ill. Ct. Cl. 407), which denied a similar claim for repayment of a Claimant's social security benefits paid to DMHDD by itself, primarily for want of proven consequential damages. (order of February 18, 1998) (Sommer, C.J.)

Ms. Jones, ably represented by the Legal Aid Foundation, timely filed a petition for rehearing from our order denying this claim. Claimant argued that *Radaszewski* was erroneously decided, that this case is distinguishable

from *Radaszewski* on several factual grounds, and that, in any event, this Claimant suffered genuine, substantial and proven damages, unlike the technical or *de minimus* damages in *Radaszewski*. The Respondent did not file a response.

On petition for rehearing, the Court found that the record in this case was inadequate and remanded the claim to Commissioner Elizabeth M. Rochford for an evidentiary hearing to ascertain additional facts and to determine whether this case is distinguishable from *Radaszewski*. (order of December 18, 1998.) (Sommer, C.J.)

That hearing was held in June, 1999, at which the parties jointly submitted two stipulations: stipulation A, as to facts; and stipulation B, as to the authenticity of various documents. No testimony was taken, but legal arguments were presented. This claim is now before us for reconsideration on the parties' stipulations, the summary judgment record, the complaint and Commissioner Rochford's report to the full Court.

### Nature of the Claim

Claimant alleges that the Respondent violated the "informed consent" requirement of section 5—111 of the Mental Health Code (405 ILCS 5/5—111) (hereinafter section 5—111) when DMHDD's mental health center applied for, and obtained, designation as Claimant's "representative payee" from the federal Social Security Administration (SSA). That designation enabled DMHDD to pay itself with the Claimant's social security benefits, which it proceeded to do. Claimant claims damages in the amount of her social security benefits that were diverted from her to the Respondent pursuant to the DMHDD's wrongful assumption of the controlling role as her representative payee. This is the same theory of liability as in *Radaszewski, supra*.

The federal and state law context is crucial to an understanding of the issues in these cases. Under section 407(a) of the Social Security Act (42 U.S.C. 407(a)), a beneficiary's social security benefits are insulated from all creditors, including health care providers, despite the otherwise valid and enforceable debt of the beneficiary for his or her care and treatment.[1] Illinois law, to the same effect, exempts social security benefits from creditor remedies. 735 ILCS 5/12—12001(g)(1).

Thus, absent a voluntary payment of such care and treatment charges by the beneficiary (or by his representative payee), there is no lawful way that the Respondent could obtain Claimant's SSA benefits to pay for her care. For DMHDD to obtain control of social security benefits as a beneficiary's "representative payee" and then to make voluntary payment to itself is essentially the only legal method—other than persuasion—for the State to obtain those funds to offset its cost of care and treatment. That procedure has been the subject of specific legislation (*i.e.*, section 5—111) and litigation (See *Brown v. Murphy* (1996), 278 Ill. App. 3d 981, 664 N.E.2d 186) in Illinois.

In *Radaszewski, supra*, this Court first examined these issues. In that case, we found a violation of the section 5—111 informed consent requirement, but denied an award for lack of consequential damages. In *Radaszewski*, we also rejected that Claimant's alternate liability

---

[1] Section 407(a) of the Social Security Act (42 U.S.C. 407(a)), preemptively insulates social security benefits from *all* debt collection:

"° ° ° none of the moneys paid or payable or rights ° ° ° under this title [42 U.S.C. §404 *et seq*.] shall be subject to execution, levy, attachment, garnishment or other legal process, or to the operation of any bankruptcy or insolvency law."

The Illinois courts have followed the federal courts' strict enforcement of this prophylactic statute and have recognized the U.S. Supreme Court's consistent refusal to countenance judicial exceptions from section 407(a). *In re Estate of Meritt* (1995), 272 Ill. App. 3d 1017, 651 N.E.2d 680; *Bennett v. Arkansas* (1988), 485 U.S. 395; *Philpott v. Essex Co. Welfare Bd.* (1973), 409 U.S. 413.

theory: that the Respondent had violated the social security regulations and common law fiduciary principles by paying itself once it became Radaszewski's representative payee. No such claim is advanced in this case.[2]

## The Facts

Claimant, Addie Jones, had been a resident of DMHDD facilities at various times from 1979 to 1992. Until November 3, 1987, Claimant's mother, Addie Sims, had been designated by the Social Security Administration as the representative payee for the Claimant's social security benefits. During that 12 to 13 year period, Addie Sims made payments to DMHDD through EMHC in excess of $6,700 for the Claimant's care. (stipulation A, pars. 2, 3.)

On November 3, 1987, the SSA certified EMHC as the designated payee for Claimant's social security benefits, replacing her mother, Addie Sims, in that capacity. That change was made pursuant to a request of the EMHC, which did not receive the Claimant's consent to its appointment as her designated payee, did not inform her of the consequences of the new designation or of her rights under section 407(a) of the Social Security Act, and did not identify to SSA any alternative payees for the

---

[2] Claimant does not contend in this case, as she might, that EMHC, while acting as her representative payee, violated a fiduciary duty to her when it paid her social security benefits to the State for her care. Under federal regulations (20 C.F.R. section 404.2021(a)(3), section 404.2040(a), (b)) and the social security caselaw, *e.g.*, *Crytes v. Schafer* (1990), 743 F. Supp. 677, 680, *aff'd*, *King v. Schafer* (8th Cir. 1991), 940 F.2d 1182, 1185, *cert. denied*, 502 U.S. 1095 (1992), and as this Court held in *Radaszewski, supra*, such payment is not a *per se* violation of law or fiduciary duty.

Nevertheless, the conduct of a state agency acting as a "representative payee" under the Social Security Act, like that of any other financial agent, is subject to fiduciary duties to the beneficiary that arise from that relationship: to use the social security benefits in the best interests of the *beneficiary. In re Estate of Merritt, supra. Merritt* makes it clear that DMHDD, as the Claimant's representative payee, *may* pay itself with her social security benefits, but as with any other representative payee, it *does not have to*, and, under section 407(a) of the Social Security Act, *cannot be compelled* to do so.

Claimant (stipulation A, pars. 4-7) as required by regulation.

EMHC did not disclose to SSA, as the SSA representative payee application form requests, the identity or availability of a parent of the beneficiary, although Claimant's mother was alive, living in Illinois and available, and had been the payee until then. (stipulation B.) Claimant affirmatively refused to consent to the change in representative payee by refusing to sign a consent form that had been tendered to her at EMHC. (exhibit 5, stipulation B.)

From November 1987, when EMHC was designated as Claimant's representative payee, to November 1988, when that designation terminated (which this record does not elucidate), EMHC paid Claimant's social security benefits to itself (*i.e.*, to DMHDD and thus to the Respondent) in the aggregate amount of $13,171.42. (stipulation A, par. 5.)

Claimant acknowledges that she received the benefit of care at EMHC from November 7, 1979, to January 14, 1992, at a total cost paid by the Respondent of $149,358.60. She has reimbursed the Respondent a total of $30,698.99, and acknowledges that she now owes an outstanding balance to the Respondent for care and treatment of $118,659.61. (Over the years, DMHDD mailed Claimant notices of determination [of charges] pursuant to section 5—111 of the Mental Health Code (405 ILCS 5/5—111), but Claimant never disputed any of the charges. (stipulation A, pars. 9, 10.)

### The Informed Consent Liability Issue

Claimant contends (1) that in the (stipulated) absence of her informed consent, the EMHC violated section 2—511 in obtaining the status as her "designated payee" from the SSA, (2) that, but for the Respondent's

illegal appropriation of her designated payee status, the Respondent would not have been able to collect, or otherwise obtain, any of the $13,000+ of her social security benefits that it did obtain, and (3) that she therefore suffered damages in the amount of the funds that EMHC paid itself as her designated payee as a consequence of the violation of the statute.

This Court has addressed these issues before, in *Radaszewski v. State, supra*, in which we held (1) that the Respondent had there violated the informed consent requirement of section 5—111; (2) that the Respondent's agents did not act improperly as representative payee by paying the Claimant's social security benefits to itself; but (3) that, nevertheless, the violation was, at most, technical and was not proven to have given rise to consequential damages.

In this case, there is no serious doubt that the Respondent violated Claimant's informed consent rights under section 5—111. As in *Radaszewski, supra*, we need not here decide whether or not to apply the section 5—111 informed consent standard announced in 1996 in *Brown v. Murphy, supra*, which would arguably be a retroactive application of that decision to the 1987 events of this case, as it is clear that the facts here fall dramatically short of the clear command of the statute on its face.

## *Radaszewski* and the Damages Issues

The only genuine issue presented here is whether this Claimant has proven damages resulting from the Respondent's improper assumption of authority as her representative payee distinguishable from *Radaszewski, supra*. The Respondent maintains that this Claimant, like Mr. Radaszewski, did not suffer any damages because his social security benefits were, in fact, used for his benefit, *i.e.*, for his care and treatment by DMHDD, and that this

Claimant, like Radaszewski, simply failed to prove that the Respondent's takeover as the representative payee resulted in a demonstrated loss.

In her arguments on rehearing, the Claimant advances four points to distinguish this case from *Radaszewski*: (1) that this case involves an overt refusal to consent by Ms. Jones rather than merely a technical failure of the Respondent to obtain informed consent from Mr. Radaszewski; (2) that the conduct of DMHDD in this case was significantly worse than in *Radaszewski* in that the DMHDD affirmatively misled the SSA by failing to disclose the availability of Ms. Jones' parent to serve as representative payee as requested by the SSA form that the Respondent's staffers submitted to SSA (exhibit 5); (3) that the Claimant-beneficiary in this case, unlike in *Radaszewski,* already had a proper (and related) representative payee whom the Respondent displaced by its improper actions without any showing of grounds to terminate the Claimant's mother as representative payee; and (4) that Ms. Jones' mother, when she was the representative payee, in fact made payments to DMHDD for Claimant's care, totalling $6,912. (*See* transcript, 6-17-99, at 5-7.)

This case clearly involves a more egregious violation of section 2—511 than in *Radaszewski, supra,* as well as a misrepresentation to the SSA, and a likely violation of federal law. However, those differences are matters of degree, or are matters that are not cognizable in this Court. The degree of violation of section 2—511 is immaterial to our determination of liability and to the damages issues under this statute. Liability turns on whether or not the statute was violated, not how badly it was violated. This Court's decision in *Radaszewski, supra,* did not reject that Claimant's reimbursement claim because the violation there of section 2—511 was itself *de minimus* or solely because his social

security payments were used by DMHDD for his benefit (*i.e.*, to pay for his care and treatment).

Damages for violation of section 2—511 are also not determined by the degree of misconduct; the statute does not provide a statutory damages formula, nor authorize exemplary damages. Like any other Claimant, Ms. Jones now (like Mr. Radaszewski before her) must establish consequential damages by competent proofs. Thus, Claimant's first three distinctions, while genuine and substantial, are immaterial for purposes of section 2—511 liability.

Claimant's last two points, however, taken together, are supportive of this Claimant's damages claim as well as distinguishable from *Radaszewski, supra*. By her evidence and the parties' stipulation, this Claimant has established that during the years when her mother served as her representative payee, before being ousted by DMHDD, her social security benefit payments were being utilized for purposes other than her care and treatment by DMHDD, except of course for the $6,912 of voluntary payments made by her mother to DMHDD. This demonstrates a material and genuine loss of the Claimant's social security benefits attributable, in fact, rather than in mere theory, to DMHDD's takeover, except to the extent that they were already being paid to DMHDD, which on a conservative approach utilizing the limited evidence in this record, will be taken to average $531 per year over the 13 years during which those voluntary payments were made.

On this record, which is substantially undisputed, we find that the Claimant has established damages of $13,371.42, less the $531 that would have been paid to DMHDD during the 12 months that DMHDD displaced her mother as representative payee. Accordingly, we will award Claimant the sum of $12,840.42 as her damages for the Respondent's violation of section 2—511.

134

## Conclusion

For the reasons set forth above, it is hereby ordered, Claimant Addie Jones is awarded the sum of $12,840.42 in full satisfaction of this claim.