(No. 105568.—

KEN LANDIS *et al.*, Appellants, v. MARC REALTY, L.L.C., *et al.*, Appellees.

*Opinion filed May 21, 2009.—Rehearing denied October 16, 2009.*

Bert Zaczek and Amy Pikarsky, of Chicago, for appellants.

Kent Maynard, Jr., of Chicago, for appellees.

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion, joined by Justice Karmeier.

Justice Kilbride also dissented upon denial of rehearing, with opinion, joined by Justice Karmeier.

## OPINION

More than four years after they vacated their apartment, plaintiffs Ken and Ana Landis filed suit against defendants Marc Realty, L.L.C., and Elliott Weiner, for

the damages provided for in subsection (f) of section 5—12—080 of the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code §5—12—080(f) (amended May 14, 1997)), based on the defendants' failure to return their security deposit and interest accruing therefrom. The circuit court of Cook County dismissed plaintiffs' complaint as untimely, finding that the two-year limitations period in section 13—202 of the Code of Civil Procedure (735 ILCS 5/13—202 (West 2004)) applied to section 5—12—080 of the RLTO. The appellate court affirmed the decision of the circuit court. No. 1—06—3028 (unpublished order under Supreme Court Rule 23). We granted plaintiffs' petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315).

The question before this court is whether subsection (f) of section 5—12—080 of the RLTO imposes a "statutory penalty" within the meaning of section 13—202 of the Code. For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

On April 30, 2001, plaintiffs signed a two-year residential lease for an apartment. The lease term ran from June 1, 2001, to May 31, 2003, with monthly rent in the amount of $4,500 for the first year, and $4,600 for the second year. Pursuant to the lease, plaintiffs tendered to defendants a security deposit in the amount of $8,400.

According to the record, plaintiffs alleged that during the term of their lease, they reported a leak in the apartment, which defendants were unable to repair; that defendants agreed to release plaintiffs from their obligations for the remainder of the lease term; and that defendants agreed to return plaintiffs' security deposit. On November 16, 2001, plaintiffs returned their keys to defendants and moved out of the apartment.

On April 25, 2006, plaintiffs filed suit in the circuit court against defendants. In counts I and II of the complaint, plaintiffs alleged that defendants failed to return their security deposit and failed to pay them interest, in violation of subsections (c) and (d) of section 5—12—080 of the RLTO, and, therefore, they were entitled to recover damages as provided in subsection (f).[1]

The relevant subsections of the RLTO provide, in part:

"(c) A landlord who holds a security deposit or prepaid rent pursuant to this section for more than six months shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate determined in accordance with Section 5—12—081. The landlord shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due.

(d) The landlord shall, within 45 days after the date that the tenant vacates the dwelling unit or within seven days after the date that the tenant provides notice of termination of the rental agreement pursuant to Section 5—12—11(g), return to the tenant the security deposit or any balance thereof and the required interest thereon ***[.]

* * *

(f) If the landlord or landlord's agent fails to comply with any provision of Section[s] 5—12—080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5—12—081. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code §§5—12—080(c), (d), (f) (amended May 14, 1997).

---

[1]Counts III and IV, based upon the Illinois Security Deposit Interest Act (765 ILCS 715/1 *et seq.* (West 2004)) and the Illinois Security Deposit Return Act (765 ILCS 710/1 *et seq.* (West 2004)), were voluntarily dismissed by plaintiffs and are not at issue in this appeal.

Defendants moved to dismiss plaintiffs' complaint, contending that it was untimely under the two-year statute of limitations in section 13—202.

Section 13—202 provides that:

"[a]ctions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a *statutory penalty* \*\*\* shall be commenced within 2 years next after the cause of action accrued \*\*\*." (Emphasis added.) 735 ILCS 5/13—202 (West 2004).

In response, plaintiffs argued that subsection (f) of section 5—12—080 of the RLTO did not impose a "statutory penalty" within the meaning of section 13—202 and, therefore, their claim was governed either by the 5-year limitations period in the "catch-all" provision of section 13—205 of the Code (735 ILCS 5/13—205 (West 2004)) or by the 10-year limitations period for an action to enforce a written contract in section 13—206 of the Code (735 ILCS 5/13—206 (West 2004)).

The circuit court agreed with defendants' argument that the two-year limitation period applied and dismissed plaintiffs' complaint. The appellate court affirmed. No. 1—06—3028 (unpublished order under Supreme Court Rule 23).

## ANALYSIS

This case turns on the proper interpretation of the phrase "statutory penalty" in section 13—202. We review this question of law *de novo. Kankakee County Board of Review v. Property Tax Appeal Board,* 226 Ill. 2d 36, 51 (2007).

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *King v. First Capital Financial Services Corp.,* 215 Ill. 2d 1, 26 (2005). The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning. *King,* 215 Ill. 2d at 26. Where the language in the statute is clear and unambiguous, this court will apply the statute as written without

resort to extrinsic aids of statutory construction. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006). Municipal ordinances are interpreted using the same general rules of statutory interpretation. *In re Application of the County Collector*, 132 Ill. 2d 64, 72 (1989).

Plaintiffs contend that the relief available under subsection (f) of section 5—12—080 of the RLTO does not constitute a "statutory penalty" pursuant to section 13—202 because: (1) the word "statutory" applies only to statutes enacted by the General Assembly and does not encompass municipal ordinances; and (2) plaintiffs are not seeking a "penalty," but are seeking remedial relief. Therefore, according to plaintiffs, the two-year statute of limitations does not apply to their claims.

### I. "Statutory"

The appellate court districts are split on the issue of whether section 13—202 applies to ordinances. The First District has held that an ordinance may be a "statutory penalty" under section 13—202 because "an ordinance is a legislative act and is the equivalent of a municipal statute." *Namur v. The Habitat Co.*, 294 Ill. App. 3d 1007, 1013 (1998), citing *City of Chicago v. Enright*, 27 Ill. App. 559 (1888) (an action of debt for penalty for violation of a municipal ordinance was a civil action, governed by the two-year statute of limitations for a "statutory penalty"); see also *Sternic v. Hunter Properties, Inc.*, 344 Ill. App. 3d 915, 918 (2003) (applying holding in *Namur* to sections 5—12—150 and 5—12—110(e) of the RLTO). The *Namur* court rejected the reasoning of the Third District in *City of Peoria v. Toft*, 215 Ill. App. 3d 440 (1991). The *Toft* court held that section 13—202 did not apply to a fine for violation of a municipal parking ordinance because "the legislature's use of the phrase 'statutory penalty' [did] not evince an intent to encompass fines or other penalties exacted for violations of local laws." *Toft*, 215 Ill. App. 3d at 443-44.

We note at the outset that the *Toft* court relied on this court's decision in *Clare v. Bell*, 378 Ill. 128, 130-31 (1941), where we held that an action by a county for collection of penalties on past-due taxes was not a "statutory penalty" that was subject to the two-year limitations period. We based our holding in *Clare* on the proposition that a statute of limitations does not apply to an action by the state, county, municipality, or another government agency unless the statute specifically includes them. *Clare*, 378 Ill. at 130-31. We did not address whether the statute applies to an action by a private individual pursuant to a municipal ordinance, as in this case. *Clare*, 378 Ill. at 130-31. Accordingly, *Clare* does not support *Toft*'s holding that the word "statutory" cannot refer to an ordinance.

Recognizing this split in authority, plaintiffs contend that the legislature's failure to include the word "ordinance" in section 13—202 illustrates its intent to exclude municipal ordinances from the provision. They argue that, had the legislature intended section 13—202 to encompass both statutes and ordinances, it would have added the term "ordinance," or it would have used a more general term, such as "enactment."

Because the term "statutory" is not defined by section 13—202, we assume the legislature intended the term to have its ordinary and popularly understood meaning. *People v. Ward*, 215 Ill. 2d 317, 325 (2005). It is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase. *People v. Beachem*, 229 Ill. 2d 237, 244-45 (2008). It is evident from examining various dictionary definitions that the word "statutory" may be understood in more than one sense. On the one hand, "statutory" may refer narrowly to a law enacted by the legislature of a state or country, which would exclude a city ordinance. Several dictionary definitions support this reading. For example, at the time

that the predecessor statute to section 13—202 was initially enacted (see Ill. Rev. Stat. 1874, ch. 83, par. 14), Webster's defined a "statute," in part, as:

"[a]n act of the legislature of a state that extends its binding force to all the citizens or subjects of that state, as distinguished from an act which extends only to an individual or company; an act of the legislature commanding or prohibiting something; a positive law." Webster's American Dictionary of the English Language (1828).

Burrill's Law Dictionary defined a "statute" as:

"[a]n act of the legislature of a state, [declaring,] commanding or prohibiting something. \*\*\* An express act of the legislature of a country. \*\*\* Literally, a thing established. Sometimes called in the old books, an *establishment* \*\*\*. A law made with all the formalities of legislation. Statute law is the express written will of the legislature, rendered authentic by certain prescribed forms and solemnities." (Emphasis in original.) Burrill's Law Dictionary 484 (2d ed. 1867).

Another legal dictionary in use at that time defined a "statute," in part, as:

"[a] law established by the act of the legislative power. An act of the legislature. The written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state." 2 Bouvier's Law Dictionary 543 (12th ed. 1868).

See also Webster's Third New International Dictionary 2230 (1993) (reflecting the narrow definition of a "statute" as "a law enacted by or by the authority of the supreme legislative branch of a government and esp. of a representative government").

On the other hand, "statutory" may have a more general, inclusive meaning, referring to written law created by a legislative body, in distinction to the common law. A municipal ordinance would be included in this definition. For example, Bouvier's provided the following description of a statute:

"This word is used to designate the written law in contradistinction to the unwritten law. See Common Law.

\*\*\* Among the civilians, the term statute is generally applied to laws and regulations of every sort; every provision of law which ordains, permits, or prohibits anything is designated a statute, without considering from what source it arises." 2 Bouvier's Law Dictionary 543 (12th ed. 1868).

Webster's also offered the following definition:

"Statutes are distinguished from common law. \*\*\* Statute is commonly applied to the acts of a legislative body consisting of representatives." Webster's American Dictionary of the English Language (1828).

Modern dictionaries continue to include the more general definition. See Black's Law Dictionary 1448 (8th ed. 2004) (defining a "statute" as "[a] law passed by a legislative body; specif., legislation enacted by any lawmaking body, including legislatures, administrative boards, and municipal courts"); Webster's Third New International Dictionary 2230 (1993) (a "statute" is "the written will of a legislature expressed with all the requisite forms of legislation as distinguished from the common or unwritten law").

The case law has mirrored the two dictionary definitions interpreting the word "statute." For example, in *Wood v. City of Chicago*, this court held that section 88 of the former Practice Act of 1872, which allowed a direct appeal to the supreme court in all cases in which "the validity of a statute is involved," did not apply to an action challenging a city ordinance, because "an ordinance is not a statute." *Wood v. City of Chicago*, 205 Ill. 70, 71-72 (1903). And in *Battershell v. Bowman Dairy Co.*, the appellate court held that the jury should have been instructed with respect to the Chicago city ordinance relating to emergency vehicles, but that it should not have been called a statute because "[s]tatute is the term applied to laws enacted by the legislature." *Battershell v. Bowman Dairy Co.*, 37 Ill. App. 2d 193, 203 (1961). By contrast, the United States Supreme Court has held that "[a]ny enactment, from whatever source originating, to which a State gives the force of law is a statute of the

State," within the meaning of a jurisdictional provision governing the validity of a statute. *Williams v. Bruffy*, 96 U.S. 176, 183, 24 L. Ed. 716, 717 (1877). See also *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 31, 31 L. Ed. 607, 612, 8 S. Ct. 741, 748 (1888) (holding that "a by-law or ordinance of a municipal corporation" is a "law of the state" within the meaning of the contracts clause of the federal Constitution); *American Country Insurance Co. v. Wilcoxon*, 127 Ill. 2d 230, 243 (1989) (holding that a "municipal statute" that conflicts with a "State statute" is void).

In light of the foregoing, it is clear that the dictionary definitions do not definitively resolve the question as to which meaning the legislature intended. "The existence of alternative dictionary definitions of [a word], each making some sense under the statute, itself indicates that the statute is open to interpretation." *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418, 118 L. Ed. 2d 52, 66, 112 S. Ct. 1394, 1402 (1992). The alternative definitions, together with the split in our appellate court, lead to the conclusion that the term "statutory" does not have a single plain meaning but is ambiguous. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003). The statute at issue can reasonably be understood in two ways.

Given the apparent ambiguity of the term "statutory," we must resort to other aids of construction in order to discern the legislative intent. It is a general principle of statutory interpretation that we give statutes the fullest, rather than the narrowest, possible meaning to which they are susceptible. *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993); *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 423 (1988). In the absence

of any indication that the legislature intended the term "statutory" to have a narrower meaning, we conclude that the legislature intended the broader meaning—that "statutory" encompasses municipal ordinances as well as state statutes.

Moreover, it is appropriate to consider the consequences that would result from construing a statute one way or the other. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003). In doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust results. *Cryns*, 203 Ill. 2d at 280. Under the plaintiffs' proposed reading of the statute, an action for a penalty in a state statute would be subject to a two-year limitations period, while an action for a penalty in a municipal ordinance would be subject to a five-year limitations period. We believe it is more reasonable to apply the two-year limitations period uniformly to all claims based on statutory penalties, whether they are imposed by state statute or by city ordinance. There is no evidence that the legislature intended to differentiate between these two types of claims, or between two groups of plaintiffs. To allow a plaintiff an additional three years to file a claim based on a municipal ordinance would, in the words of the defendants, "elevate municipal law over State law." We find that the legislature must have intended for a "statutory penalty" to include a municipal ordinance. To the extent that the *Toft* court held otherwise, that case is overruled.

This court has defined a "penalty" as "in the nature of punishment for the nonperformance of an act or for the performance of an unlawful act." *Hoffmann v. Clark*, 69 Ill. 2d 402, 429 (1977). See also *M.H. Vestal Co. v. Robertson*, 277 Ill. 425, 428-29 (1917) (a penal statute is "one which imposes a forfeiture or a penalty for transgressing its provisions or for doing a thing prohibited"). In addition, a penal statute "subjects one person to the

payment of a sum of money to another without reference to any actual injury and without requiring him to allege or prove an actual injury." *Babcock v. Harrsch*, 310 Ill. 413, 417 (1923).

The factors outlined in *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732 (1982), accurately summarize Illinois law with respect to this issue. The *McDonald's* court held that a statutory penalty must: (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff. *McDonald's*, 108 Ill. App. 3d at 738, citing *Hoffmann*, 69 Ill. 2d at 429. By contrast, a statute is remedial where it "imposes liability only when actual damage results from a violation" and where "liability is contingent upon damage being proven by the plaintiff." *McDonald's*, 108 Ill. App. 3d at 738, citing *Vestal*, 277 Ill. at 429-30.

Applying the *McDonald's* factors to the case at bar, plaintiffs concede, and we agree, that subsection (f) of section 5—12—080 imposes automatic liability for a violation of its terms. The provision states that where a landlord fails to comply with the terms of the section, the tenant "shall be awarded" damages in an amount equal to two times the security deposit plus interest. Chicago Municipal Code §5—12—080(f) (amended May 14, 1997). The use of the word "shall" suggests that the award to plaintiff is automatic, or mandatory, where the landlord has violated the terms of the provision. See *People v. Galan*, 229 Ill. 2d 484, 532 (2008) (the word "shall" indicates a mandatory requirement).

Next, plaintiffs contend that subsection (f) of section 5—12—080 does not set forth a predetermined amount of damages because it does not impose a specific sum to be awarded. Plaintiffs wrongly assume that a provision that sets forth a formula for calculating damages rather

than identifying a specific dollar amount cannot be characterized as a penalty. We find that subsection (f) of section 5—12—080 imposes a predetermined amount of damages because it provides a formula for a court to use in calculating damages to be awarded to the plaintiff. See *Namur v. The Habitat Co.*, 294 Ill. App. 3d 1007, 1011 (1998) (section 5—12—080(f) is penal because it specifies a formula by which the amount of damage is to be calculated); *cf. Sternic*, 344 Ill. App. 3d at 919 (sections 5—12—110(e) and 5—12—150 of the RLTO are not statutory penalties because "they do not specify an amount to be awarded for violations or a formula for calculating an award").

Finally, plaintiffs contend that they are seeking relief for actual damages and that the harm caused by a delay in receiving a security deposit is self-evident. In contrast to other sections within the RLTO, however, subsection (f) of section 5—12—080 does not specifically allow a plaintiff to recover actual damages. See, *e.g.*, Chicago Municipal Code §§5—12—060 (unlawful entry by a landlord); 5—12—110 (failure to maintain premises); 5—12—130 (enforcement of a prohibited lease provision). Under the terms of subsection (f) of section 5—12—080, it is irrelevant whether plaintiffs have suffered actual damages. Regardless of the costs incurred by plaintiffs, or the time that has passed since the violation, the relief available under section 5—12—080(f) is not dependent on plaintiffs' actual damages.

As to plaintiffs' argument that they are seeking contractual relief under section (f) of section 5—12—080, the provision clearly does not provide relief to tenants based on the contract between the landlord and tenant. Moreover, the return of the security deposit itself is not included in the statutory damages available under subsection (f) of section 5—12—080. See *Solomon v. American National Bank & Trust Co.*, 243 Ill. App. 3d

132, 136-37 (1993). Under section 5—12—190 of the RLTO, plaintiffs may avail themselves of the rights and remedies under state law if they wish to recover the actual security deposit. Chicago Municipal Code §5—12—190 (amended November 6, 1991).

Because subsection (f) of section 5—12—080 imposes automatic liability for a violation of its terms, sets forth a predetermined amount of damages, and imposes liability regardless of plaintiffs' actual damages, the provision is a "penalty" within the meaning of section 13—202.

We find that subsection (f) of section 5—12—080 is a "statutory penalty" under section 13—202 and, thus, is subject to the two-year statute of limitations. Accordingly, we affirm the appellate court's decision, which affirmed the dismissal of plaintiffs' complaint because it was not timely filed.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE KILBRIDE, dissenting:

In my view, the two-year limitations period in section 13—202 of the Code of Civil Procedure (Code) (735 ILCS 5/13—202 (West 2004)) does not apply to actions based on municipal ordinances. I would, therefore, hold that plaintiffs' claim is not barred by the limitations period in section 13—202. Accordingly, I respectfully dissent.

Counts I and II of plaintiffs' complaint alleged defendants failed to return their security deposit and failed to pay interest as required by section 5—12—080 of the Chicago Residential Landlord and Tenant Ordinance (RLTO). Defendants moved to dismiss the complaint, asserting it was untimely under section 13—202 of the Code. Section 13—202 provides a two-year limita-

tions period for actions involving a "statutory penalty." 735 ILCS 5/13—202 (West 2004).

Initially, I believe the majority mistakenly frames the issue as "whether subsection (f) of section 5—12—080 of the RLTO imposes a 'statutory penalty' within the meaning of section 13—202 of the Code." 235 Ill. 2d at 4. Rather, the issue is more properly framed as whether the legislature intended "[a]ctions *** for a statutory penalty" (735 ILCS 5/13—202 (West 2004)) to encompass actions brought pursuant to municipal ordinances. I submit that the legislature did not intend to include municipal ordinances within the meaning of "statutory penalty."

Our fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552-53 (2006). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). Undefined statutory terms must be given their ordinary and popularly understood meanings. *People v. Ward*, 215 Ill. 2d 317, 325 (2005).

This court has held that the meaning of a statute "depends upon the intent of the drafters *at the time of its adoption*." (Emphasis added.) *Sayles v. Thompson*, 99 Ill. 2d 122, 125 (1983). The term "statutory penalty" first appeared in the predecessor to section 13—202 in 1874 (see Ill. Rev. Stat. 1874, ch. 83, par. 14), and it has not been amended since that time. In determining the legislature's intent, we must look to the popularly understood meaning of the term "statutory" in 1874.

In 1874, the term "statute" was commonly understood to mean:

"An act of the legislature of a state, [declaring] commanding or prohibiting something. *** An express act of the legislature of a country. *** A law made with all the formalities of legislation. Statute law is the express written

will of the legislature, rendered authentic by certain prescribed forms and solemnities." Burrill's Law Dictionary 484 (2d ed. 1867).

Another commonly used legal dictionary in 1874 defined "statutory" as

"A law established by the act of the legislative power. An act of the legislature. The written will of the legislature, solemnly expressed according to the forms necessary to constitute it the law of the state." 2 Bouvier's Law Dictionary 543 (14th ed. 1874).

In contrast, "ordinance" was defined as "[a] law or regulation of a municipal corporation." Burrill's Law Dictionary 264 (2d ed. 1867). Bouvier's Law Dictionary defined "ordinance" as:

"A law; a statute; a decree.

This word is more usually applied to the laws of a corporation than to the acts of the legislature: as, the ordinance of the city of Philadelphia." 2 Bouvier's Law Dictionary 263 (14th ed. 1874).

These definitions unmistakably show that a "statute" was understood to mean a legislative act of a state or country, while an "ordinance" was understood as a law of a municipality.

The majority fails to acknowledge that these legal dictionaries clearly differentiate between "statutes" and "ordinances," and relies on modern dictionary definitions to conclude that the term "statutory" is ambiguous. Contrary to the majority's conclusion, in 1874 the definition of the term "statute" did not include acts of a municipality, nor did the definition of "ordinance" include acts of the state legislature. Acts of a municipal corporation were specifically included in the definition of an "ordinance." Moreover, a "legislature" is not a "municipality" and, therefore, even applying the definition of "statutory" liberally, as the majority does, an act of a municipality is not an act of the legislature. Thus, a distinction between an ordinance and a statute was commonly recognized in 1874 when the phrase "statutory

penalty" was added to the predecessor to section 13—202.

Importantly, this court also recognized a distinction between statutes and ordinances during the relevant time period. In *Wood v. City of Chicago*, 205 Ill. 70 (1903), the plaintiff filed a direct appeal challenging the validity of a city ordinance. This court noted it had jurisdiction over direct appeals involving the validity of a statute, but specifically held that "an ordinance is not a statute" within the meaning of the Constitution of 1870. *Wood*, 205 Ill. at 72. This court explained that an ordinance is "purely local, for the regulation of affairs within [a] municipality, and is distinguished from general laws and statutes." *Wood*, 205 Ill. at 72. The appeal was, therefore, dismissed for lack of jurisdiction. *Wood*, 205 Ill. at 72. This court subsequently reaffirmed the clear distinction between statutes and ordinances, holding that a municipal ordinance is not a statute. See *Masonic Fraternity Temple Ass'n v. City of Chicago*, 217 Ill. 58, 60 (1905) ("an ordinance is not a statute"); *People ex rel. Goldman v. Harrison*, 223 Ill. 540, 544 (1906) ("an ordinance is not a statute"); *Village of Lake Zurich v. Deschauer*, 310 Ill. 209, 211 (1923) ("an ordinance is not a statute"). This court's precedent could not be more clear.

The majority, while briefly acknowledging that this court held in *Wood* that "an ordinance is not a statute," ultimately determines that the term "statutory" is ambiguous in order to reach its conclusion that "the legislature intended the broader meaning—that 'statutory' encompasses municipal ordinances as well as state statutes." 235 Ill. 2d at 12. The majority does not, however, overrule *Wood*, nor does it distinguish that opinion.

Rather, the majority chooses to consider the consequences that would result from a plain reading of the statute and determines it is "more reasonable to apply the

two-year limitations period uniformly." 235 Ill. 2d at 12. As a result of today's holding, municipalities seeking to enforce a penalty created by ordinance may well be limited by section 13—202's two-year statute of limitations.

This result is contrary to this court's holding in *Clare v. Bell*, 378 Ill. 128 (1941). In that case, this court rejected application of this same two-year statute of limitations to a cause of action by a county for collection of penalties on delinquent real estate taxes. The majority attempts to distinguish *Clare* and does not overrule it. Further, the majority fails to explain why section 13—202 is applied differently depending on whether an individual or a unit of local government is bringing the action. Thus, we are left with inconsistent applications of section 13—202 by this court.

In sum, the term "statutory penalty" must be construed according to its meaning in 1874, when the term was added to the predecessor to section 13—202. In 1874, the term "ordinance" was not interchangeable or synonymous with the term "statute." "Statute" referred specifically and exclusively to an act of the legislature of a state or country and did not encompass municipal laws. Municipal laws were considered to be "ordinances." Based on the plain meaning of the terms "statute" and "ordinance" at the relevant time, I would hold that the two-year limitations period in section 13—202 does not apply to bar plaintiffs' action for damages under section 5—12—080(f) of the municipal ordinance. Accordingly, I would reverse the judgment of the appellate court. I therefore respectfully dissent.

JUSTICE KARMEIER joins in this dissent.

Dissent Upon Denial of Rehearing

JUSTICE KILBRIDE, dissenting:

In their petition for rehearing, plaintiffs, Ken and Anna Landis, argue that in light of this court's ruling

that the term "statutory" is ambiguous and in need of statutory interpretation, the legislature's prior use of that term should have been considered. I agree with plaintiffs that section 1 of the Statute on Statutes supports plaintiffs' argument that "the legislature linked the term 'statute' solely to Acts of the legislature."

The Statute on Statutes, originally adopted in 1874, was entitled "AN ACT to revise the law in relation to the construction of the statutes." Ill. Rev. Stat. 1874, ch. 131, par. 1 *et seq.* Section 1 of the Statute on Statutes provided, in relevant part:

> "Be it enacted by the People of the State of Illinois, represented in the *General Assembly*, That in the construction of all *statutes* now in force, or which may hereafter be enacted, the following rules shall be observed, unless such construction would be inconsistent with the *manifest intent of the legislature* or repugnant to the context of the same statute \*\*\*[.]" (Emphases added.) Ill. Rev. Stat. 1874, ch. 131, par. 1.

The Statute on Statutes exists expressly for the purpose of aiding in the interpretation of statutes. The Statute on Statutes refers to statutes *only* in the context of the "General Assembly" and the "legislature." Statutes are passed by the General Assembly. Ordinances are not. Section 1 therefore makes it clear that at the time section 13—202 of the Code of Civil Procedure was passed, the legislature did not intend the terms "statute" and "statutory" to refer to ordinances as well as to statutes.

I continue to believe that the majority has erroneously failed to consider the meaning of the term "statutory penalty" at the time of the adoption of section 13—202 of the Code of Civil Procedure. Since I believe the legislature did not intend to include municipal ordinances within the meaning of "statutory penalty," I respectfully dissent upon denial of the plaintiffs' petition for rehearing.

JUSTICE KARMEIER joins in this dissent.