2023 IL App (1st) 220714

SIXTH DIVISION
March 17, 2023

No. 1-22-0714

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE CITY OF CHICAGO *ex rel.* DEBORAH WALTON, | ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) | |
| PROG LEASING, LLC, d/b/a Progressive Leasing; NPRTO ILLINOIS, LLC, d/b/a Progressive Leasing; and AARON'S HOLDING COMPANY, INC., | ) ) ) ) | No. 21 L 9976 The Honorable Michael F. Otto, Judge, presiding. |
| Defendants | ) ) | |
| (The City of Chicago, Appellee). | ) | |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Relator Deborah Walton appeals from the circuit court of Cook County's dismissal of her

*qui tam* complaint, filed on behalf of the City of Chicago (City), against defendants Prog Leasing,

LLC,[1] and NPRTO Illinois, LLC, both doing business as Progressive Leasing, and Aaron's

Holding Co., Inc. (collectively, defendants), seeking penalties and interest for defendant's alleged

---

[1]Walton's complaint identifies this defendant as "Prog Leasing, LLC," both in the caption and body of her complaint. However, her complaint and appellate brief also refer to an entity named "Progressive Leasing, LLC," and we are not clear whether Prog Leasing, LLC, and Progressive Leasing, LLC, are the same entity.

fraudulent failure to collect and remit lease taxes as required by the Chicago Municipal Code. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Walton's complaint made the following allegations, which we accept as true for the purposes of this appeal. Prog Leasing was "engaged in the lease-to-own or a rental- or lease-purchase agreement business targeting what it refers to as 'credit challenged consumers.' " Prog Leasing's payment plans were available online and in more than 24,000 retail stores nationwide, including to customers in Chicago. NPRTO Illinois was a wholly owned subsidiary of Prog Leasing, whose purpose was to pay taxes owed on Prog Leasing's transactions. In 2018, Walton began working in Prog Leasing's accounting department. In the first quarter of 2020, Walton attended Prog Leasing's monthly tax meeting, along with Prog Leasing's tax director, Jonathan Smith; senior tax director, Jacob White; controller and vice president of finance, Vickie Johnson; and accountant, Jeff Baker. At the meeting, the group discussed the fact that Prog Leasing had not been paying the Chicago lease tax (Chicago Municipal Code § 3-32-030(A) (amended Nov. 24, 2020)) on its lease transactions and the implications for failing to pay the tax. Smith confirmed to White during the meeting that Prog Leasing had not been collecting or remitting the Chicago lease tax, and Smith reminded White that Smith brought this to White's attention a couple of years prior. Johnson asked Walton to put together an estimate of the lease taxes owed, along with interest and penalties. With Baker's help, Walton estimated that Prog Leasing and NPRTO owed the City approximately $11 million in unpaid lease taxes, $2.8 million in penalties, and $2.6 million interest, for a total of $16.4 million.

¶ 4    After the next monthly tax meeting, Prog Leasing's chief financial officer, Bryan Gardner, was informed of the unpaid lease taxes, and Gardner, Johnson, and White contacted the company's

auditor. The auditor suggested that defendants could either file a voluntary disclosure of business taxes or start paying the lease tax without disclosing the past nonpayments. After a discussion, a third option arose: defendants could create a company with a new name and start paying the lease taxes as a way to avoid scrutiny. We infer from Walton's complaint that defendants did not choose a course of action at that time.

¶ 5    Although the issue of the Chicago lease taxes was on the defendants' agenda for subsequent tax meetings, it was not a top priority, particularly when defendants were facing a Federal Trade Commission investigation into its advertisements, which culminated in a $172 million settlement. Walton raised the lease tax issue with Prog Leasing's new tax director, Davin Harnois, but Walton did not receive any guidance. Walton resigned from Prog Leasing in August 2021.

¶ 6    Walton's complaint alleged a violation of Chicago's false claims ordinance, asserting that defendants knowingly failed to remit lease taxes for at least nine years and created various false records through its conduct by failing to file required documents with the city and state.[2] Chicago Municipal Code § 1-22-020(a)(7) (amended Nov. 7, 2018). Plaintiff sought money damages on behalf of the City, "including interests and penalties" allowed under the Municipal Code, pre- and postjudgment interest, and costs. For herself, she sought "[t]he maximum amount allowed pursuant to § 1-22-030(d) of the False Claims Act," reimbursement of expenses, attorney fees, costs, and, "should the government elect to seek an alternate remedy, the maximum allowed pursuant to § 1-22-030(c)(5)."

¶ 7    The City moved to dismiss Walton's complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). The City argued Walton could not state

---

[2]Whether the failure to create any record at all satisfies section 1-22-020(a)(7)'s requirement that a false record or statement be "knowingly made" or "use[d]" was not an issue presented to the circuit court.

a claim because the City's false claims ordinance precluded private civil actions to enforce tax ordinances and, additionally, private civil actions were only authorized against city contractors.

¶ 8    On April 20, 2022, after briefing and oral argument, the circuit court granted the City's motion and dismissed Walton's complaint with prejudice "for the reasons stated on the record during oral argument." Although the appellant attached a copy of the transcript to her appellate brief, the record on appeal itself does not contain a transcript or other report of proceedings for any hearings before the circuit court. Walton filed her notice of appeal on May 20, 2022.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, Walton argues that the circuit court erred by dismissing her complaint pursuant to section 2-615 of the Code because her "claim seeking penalties and interest for fraud are not excluded from the City's false claims act." Resolution of Walton's appeal requires us to interpret the Chicago Municipal Code, which presents a question of law that we review *de novo*. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009). Whether the circuit court properly dismissed Walton's claim under section 2-615 of the Code is also a question of law subject to *de novo* review. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 11                       A. Chicago's False Claims Ordinance

¶ 12    Section 1-22-020(a) of the Chicago Municipal Code identifies eight types of false claims subject to the ordinance. Chicago Municipal Code § 1-22-020(a) (amended Nov. 7, 2018). Walton brought her claim under section 1-22-020(a)(7), which creates a civil claim against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the city." *Id.* § 1-22-020(a)(7).

4

¶ 13    Section 1-22-030(b)(1) authorizes a private civil suit "against a city contractor for a violation of Section 1-22-020 for the person [(relator)] and for the city." Chicago Municipal Code § 1-22-030(b)(1) (amended Nov. 8, 2012). The Municipal Code defines "city contractor" as:

> "a person who enters into a contract or who has taken any action to obtain a contract, or any owner, officer, director, employee or agent of such person, or any subcontractor, or any person acting in concert or conspiring with such person, but shall not include any person who is a city official or employee or was a city official or employee at the time of the alleged conduct." Chicago Municipal Code § 1-22-010 (added Dec. 15, 2004).

Further, the term "contract" is defined as

> "any agreement or transaction pursuant to which a person (i) receives or may be entitled to receive city funds or other property, including grant funds, in consideration for services, work or goods provided or rendered, including contracts for legal or other professional services, (ii) purchases the city's real or personal property or is granted the right to use it by virtue of a lease, license or otherwise, or (iii) collects monies (other than taxes) on behalf of the city." *Id.*

¶ 14    Section 1-22-030(e) excepts certain types of claims from the City's false claims ordinance. It provides: "In no event may a person bring an action under subsection (b) which *** (ii) concerns the application, interpretation or enforcement of any tax ordinance, as that term is defined in Section 3-4-020 of this Code." Chicago Municipal Code § 1-22-030(e) (amended Nov. 8, 2012).

¶ 15                              B. The City's Tax Ordinance

¶ 16    Section 3-4-020 of the Municipal Code defines "tax ordinance" as "any chapter of this Code, or other ordinance passed by the city council, that imposes a tax." *Id.* § 3-4-020. The term

"tax" is defined as "any sum, other than interest, penalties or fines, payable pursuant to a revenue measure imposed under any of the chapters of this Code or under any other ordinance passed by the city council. The term 'tax' shall not include regulatory, compensation or franchise fees." *Id.*

¶ 17    Chapter 3-32 of the Municipal Code, titled the "Chicago Personal Lease Transaction Tax Ordinance" (Chicago Municipal Code § 3-32-010 (added Dec. 15, 1992)), imposes a tax on personal property lease transactions (Chicago Municipal Code § 3-32-030(A) (amended Nov. 24, 2020)). The lessor is obligated to collect any tax imposed from the lessee at the time of the transaction and remit the tax to the City. Chicago Municipal Code § 3-32-070(A) (amended Nov. 19, 2008). "In the event that a lessor fails to collect or remit the tax required to be collected by this section, the lessor shall be liable to the city for the amount of such tax." *Id.* If the lessor does not collect the tax, the lessee must file a return and pay the tax to the City. Chicago Municipal Code § 3-32-080(B) (amended Nov. 16, 2011).

¶ 18                                C. Walton's Claim

¶ 19    Walton's theory is that, through her *qui tam* action, she is attempting to collect penalties and interest—not the tax itself—owed by defendants that defendants fraudulently withheld from the City. She contends that because section 3-32-080 requires the lessee to pay the lease tax if the lessor fails to collect the tax (although she did not name as defendants any lessee who owes the tax), section 3-32-070 must necessarily be read to impose a penalty against defendants in "the amount of the tax" for their failure to collect or remit the lease tax. She asserts section 3-32-080 imposes a penalty (rather than the tax itself) because the Municipal Code's definition of "tax" specifically excludes "interest, penalties or fines" and the plain language of section 3-32-070 does not require a lessor who failed to collect and remit the lease tax to pay the tax, but instead makes the lessor liable to the City for the amount of the tax. Chicago Municipal Code § 3-32-070(A)

(amended Nov. 19, 2008). She further argues that her claim is not barred by the tax exclusion in section 1-22-030(e) because, when read together with the definitions of "tax" and "tax ordinance," the exclusion bars claims "concerning the application, interpretation or enforcement of any chapter" of the Municipal Code that imposes any sum—other than interest, penalties, or fines—payable pursuant to a revenue measure imposed under any of the chapters of the Municipal Code.

¶ 20    We look to the language of the statute, given its plain and ordinary meaning, to ascertain and give effect to the legislature's intent. *Landis*, 235 Ill. 2d at 6. "The best evidence of legislative intent is the statutory language itself ***." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181 (2007). When a statute defines terms used within the statute, "those terms must be construed according to the definitions contained in the act." (Internal quotation marks omitted.) *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 379 (1996). We construe a statute as a whole, and each provision should be given a reasonable meaning to, if possible, avoid rendering any provision superfluous. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35. We presume that the legislature did not intend absurd, inconvenient, or unjust results. *Id.*

¶ 21    We find that Walton's claim is barred by section 1-22-030(e) of the Municipal Code. The plain language of section 1-22-030(e) bars private actions that "concerns the application, interpretation or enforcement of any tax ordinance, as that term is defined in section 3-4-020 of this Code." Chicago Municipal Code § 1-22-030(e) (amended Nov. 8, 2012). Section 3-4-020 defines a tax ordinance as "*any chapter* of this Code, or other ordinance passed by the city council, *that imposes a tax*." (Emphases added.) *Id.* § 3-4-020. The term "concerns" in section 1-22-030(e) is broad and is not limited in any way by the remaining statutory language, reflecting an intent to broadly exclude claims related to subject matter contained in chapters of the Municipal Code that

impose a tax. See *Chicago Sun-Times v. Chicago Transit Authority*, 2021 IL App (1st) 192028, ¶ 41 (" 'broad language—even when construed narrowly—is still broad language.' ") (quoting *Mayer Brown LLP v. Internal Revenue Service*, 562 F.3d 1190, 1194 (D.C. Cir. 2009))). Chapter 3-32 is a chapter of the Municipal Code that imposes a tax on personal property lease transactions. Chicago Municipal Code § 3-32-030(A) (amended Nov. 24, 2020). Because Walton's claim concerns the application, interpretation, or enforcement of the lease tax in chapter 3-34 of the Municipal Code against defendants, her claim is barred.

¶ 22    Walton resists this plain reading of the Municipal Code by arguing that section 3-32-070(A) imposes a penalty—as opposed to a tax—on lessors "for the amount of such tax" if they fail to collect and remit the lease tax. In her view, the characterization of the relief she seeks takes her claim outside the exception of section 1-22-030(e). However, even if we construed section 3-32-070(A) as a penalty (even though the Municipal Code does not expressly label a noncompliant lessor's liability as a "penalty"), Walton cannot escape the fact that section 3-32-070(A) is still within chapter 3-32 of the Municipal Code and that chapter imposes a tax. As section 1-22-030(e) makes plain, no private actions can be brought that concern the application, interpretation, or enforcement of *chapters* of the Municipal Code that impose taxes. Because section 3-32-030 imposes the lease tax, section 1-22-030(e) bars private actions to enforce *any* of the provisions contained in chapter 3-32 of the Municipal Code.

¶ 23    Walton tries to avoid this result by reading the definition of "tax" alongside the definition of "tax ordinance" such that, in her interpretation, section 1-22-030(e) would bar private actions concerning:

> "the application, interpretation, or enforcement of any chapter of this Code, or other
> ordinance passed by the city council, that imposes any sum, *other than interest,*

*penalties or fines*, payable pursuant to a revenue measure imposed under any of the

chapters of this Code or under any other ordinance passed by the city council."

In other words, she argues that the definition of the phrase "tax ordinance" depends on the definition of "tax," such that only an ordinance that imposes a sum *other than* interest, penalties, or fines is excluded by section 1-22-030(e). Therefore, ordinances that impose interest, penalties, or fines are excepted—or, as she puts it, "carved out"—from the exclusion.

¶ 24    Walton's suggested construction of section 1-22-030(e) is unreasonable. First, the plain language of section 1-22-030(e) excludes entire chapters from private civil actions premised on false claims. If the City meant only to exclude the specific *provisions* of chapters that impose a tax, while also intending to permit claims seeking nontax payments allegedly owed under chapters that impose a tax, then it presumably would have said so. It did not. As we have already explained, where a chapter of the Municipal Code contains provisions that impose a tax, that chapter cannot be enforced through a private civil action. It follows that if the chapter that imposes a tax also contains provisions that impose penalties, interest, or fines, a private civil action to enforce the nontax provisions is likewise barred by section 1-22-030(e). To conclude otherwise would lead to the absurd result that a private civil action concerning the application or interpretation of a chapter imposing a tax is permitted so long as the claim only seeks penalties and interest and does not seek enforcement of the imposition of the tax. Such a reading would eviscerate the plain language of section 1-22-030(e).

¶ 25    The Second Circuit reached a similar conclusion in *United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 377 F.3d 145 (2d Cir. 2004). There, the relator brought claims against the defendants under the federal False Claims Act (31 U.S.C. § 3729 *et seq.* (2000)) for allegedly defrauding the federal government through a complex financial scheme known as "yield

burning" relating to government bonds. *Lissack*, 377 F.3d at 148-50. The district court dismissed the relator's claims because the False Claims Act contained a "Tax Bar," which excluded from its coverage all " 'claims, records, or statements made under the Internal Revenue Code of 1986.' " *Id.* at 146-47, 151 (quoting 31 U.S.C. § 3729(e)). On appeal, the relator asserted that his claim was not "made under the Tax Code" because he was not seeking to collect unpaid taxes but was instead "seeking to collect amounts the Government supposedly lost" through the machinations of the yield burning scheme. *Id.* at 153. In finding the relator's claims to be barred, the Second Circuit observed that his entire claim "depends on proving that [defendants] violated provisions of the Tax Code." *Id.* The relator admitted that "in the absence of a violation of the Tax Code, he cannot prevail, as there would be no 'false' claim insofar as the FCA is concerned." *Id.* at 154. Likewise, here, Walton's alleged claim for penalties and interest resulting from defendants' failure to collect and remit lease taxes wholly depends on proof that a lease tax applied to defendants' transactions and that defendants failed to comply with tax collection obligations under the Municipal Code. In other words, Walton cannot demonstrate that she has any false claim separate and apart from defendants' alleged failure to collect and remit the lease tax, which requires an application and interpretation of a tax chapter.

¶ 26    Walton counters that "[i]f an entire chapter is excluded, then it follows that everything contained in the chapter is excluded. Therefore, a reference to 'interest, penalties or fines' that are included in the already excluded chapters would be unnecessary, superfluous." Relatedly, she argues that because the phrase "other than" precedes "interest, penalties or fines" in the definition of "tax," section 1-22-030(e)'s exclusion does not include claims for interest, penalties, or fines because we would effectively read the phrase "other than" to mean "includes."

¶ 27    We disagree with Walton's construction. The term "tax ordinance" is defined by its plain language to refer to the *chapters* of the Municipal Code that impose a sum payable pursuant to a revenue measure. Whatever else those chapters contain is immaterial for the purposes of understanding the application of section 1-22-030(e) because chapters of the Municipal Code that impose a tax are excluded on the basis that they impose a tax. Stated differently, whether a chapter is excluded depends not on *what* a tax is, but rather whether the *chapter imposes* a tax, whatever the tax may be. Walton insists that we must construe the Municipal Code in a manner that avoids rendering some provision superfluous, but nothing is rendered superfluous or unnecessary here; there is nothing in the structure of the Municipal Code to suggest the provided definition of "tax" regulates what chapters of the Municipal Code impose taxes for the purposes of section 1-22-030(e). Regardless, Walton offers no explanation of how—even if a provision was rendered superfluous—that would except her claim from the exclusion because the collection of interest, penalties, or fines for defendants' alleged failure to comply with their obligations under chapter 32-3 of the Municipal Code still concerns the application, interpretation, or enforcement of a chapter that imposes a tax. Her own argument lays that bare: she interprets section 3-32-070(A) as imposing a penalty on a lessor "for the amount of the tax," while simultaneously arguing that her claim does not concern the application, interpretation, or enforcement of a chapter that imposes a tax.

¶ 28    Walton argues that *State ex rel. Beeler Schad & Diamond, P.C. v. Ritz Camera Centers, Inc.*, 377 Ill. App. 3d 990 (2007), supports her interpretation of the Municipal Code. There, the relator brought claims under the Whistleblower Reward and Protection Act (Whistleblower Act) (740 ILCS 175/1 *et seq.* (West 2002)) against numerous retailers, alleging the retailers falsely claimed that no use tax was due on online sales to Illinois consumers. *Beeler*, 377 Ill. App. 3d at

994. The circuit court denied the retailers' motion to dismiss the complaint and certified numerous questions of law for immediate appellate review under Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994). *Beeler*, 377 Ill. App. 3d at 994-95. One of the questions before the *Beeler* court was the following:

" 'Does the application of the general provisions of the [Whistleblower Act] *** to enforce the sales and use tax laws improperly deprive taxpayers of the specific rights and privileges afforded them under the Protest Monies Act (30 ILCS 230/1), the Taxpayer's Bill of Rights, 20 ILCS 2520/1, and/or the statutory administrative procedures offered by the Illinois Department of Revenue, 35 ILCS 105/1; 35 ILCS 120/1, such that the [Whistleblower Act] cannot be used to enforce the collection of taxes due the State?' " 377 Ill. App. 3d at 993-94.

In addressing that question, the *Beeler* court found that it could not "reach the definitive conclusion that tax claims can never be brought under the [Whistleblower Act] on the basis that the [Whistleblower Act] does not provide the same safeguards and protections provided for under the tax laws." *Id.* at 1005. The court observed:

"[T]he specific inquiry and determination that must be made under the [Whistleblower Act] is whether defendants acted knowingly in failing to pay use tax liabilities. The inquiry and dispute at issue here is not the determination and disagreement over the amount of tax assessed, but whether defendants acted with the requisite fraudulent intent and knowledge. In light of the nature of the claim and its characterization as a civil cause of action, we cannot hold that the [Whistleblower Act] can never be used to enforce the collection of taxes due to the State because it deprives defendants of due process protections. See 740 ILCS

12

175/4 (West 2002). It is also worthy to note that the [Whistleblower Act] does not seek to impose and collect a tax, but instead seeks to penalize actions that deprive the government of funds rightfully owed to it regardless of the nature of the underlying transaction giving rise to the claim." *Id.* at 1005-06.

¶ 29 Here, Walton seizes on *Beeler*'s discussion of the "nature of" the claims and allegations to argue that the nature of her allegations is relevant to interpreting the exclusion in section 1-22-030(e). But as Walton concedes, *Beeler* involved different statutes and different issues. Whether the Whistleblower Act might be used to enforce tax laws does not aid us in interpreting the Municipal Code's clear prohibition against private civil actions concerning the interpretation, application, or enforcement of chapters that impose taxes. Nor does Walton argue that *Beeler* found that a statutory exclusion contained an implicit exception for claims premised on fraud. We find *Beeler* inapposite and unpersuasive on the issue before us. As *Beeler* observed, the Whistleblower Act did not contain limitations on the types of transactions that might give rise to a claim. *Id.* at 1005. Here, on the other hand, section 1-22-030(e) expressly limits and exempts all claims concerning the application, interpretation, or enforcement of any chapter of the Municipal Code that imposes a tax. If the City wanted to make an exception for private civil claims for collecting penalties based on alleged fraud in failing to collect and remit taxes owed under the Municipal Code, then it would not have imposed a blanket prohibition on private civil actions for enforcing chapters of the Municipal Code that impose taxes.

¶ 30 In sum, we are not persuaded by any of Walton's arguments that section 1-22-030(e) should be construed to permit a private civil action seeking penalties or interest that result from alleged fraud related to the nonpayment of taxes owed under the Municipal Code. The circuit court properly dismissed Walton's claim with prejudice under section 2-615 of the Code.

¶ 31     We also agree with the City that Walton's complaint fails because she was not pursuing a false claim against a "city contractor." Section 1-22-030(b)(1) authorizes a private civil suit "against a city contractor for a violation of Section 1-22-020 for the person [(relator)] and for the city." Chicago Municipal Code § 1-22-030(b)(1) (amended Nov. 8, 2012). City contractors are those who, in relevant part, enter into contracts. Chicago Municipal Code § 1-22-010 (added Dec. 15, 2004). "Contract" is defined as

> "any agreement or transaction pursuant to which a person (i) receives or may be entitled to receive city funds or other property, including grant funds, in consideration for services, work or goods provided or rendered, including contracts for legal or other professional services, (ii) purchases the city's real or personal property or is granted the right to use it by virtue of a lease, license or otherwise, or (iii) collects monies (other than taxes) on behalf of the city." *Id.*

¶ 32     Walton's complaint alleged that defendants were liable to the City for penalties and interest as a result of failing to collect and remit lease taxes. She plainly did not allege that defendants had agreements or were engaged in transactions with the City to which they received or were entitled to receive City funds or property, or had purchased, leased, or licensed any of the City's real or personal property, or collected money other than taxes on behalf of the City.

¶ 33     Walton argues, however, that there is no requirement that a party have a contract with the City to meet the definition of "city contractor." She contends that defendants would finance the purchase of consumer goods on behalf of customers under a lease and that the customers would then make payments to defendants, "some of which was considered property of the City," and that any tax that was collected was held in trust for the City, constituting a debt owned by defendants to the City. See Chicago Municipal Code § 3-32-080 (amended Nov. 16, 2011).

¶ 34　The problem with Walton's argument is that remitting collected taxes obviously falls outside the definition of a contract because section 1-22-010 excludes the collection of taxes on behalf of the City. Likewise, filing a return and paying the tax directly is not a contract because it does not involve receiving City funds or property in consideration for anything, because there is no bargained-for exchange with the City. It similarly does not involve purchasing, leasing, or licensing any City property or collecting nontax money for the City. We therefore agree with the City that Walton's action was properly dismissed with prejudice for the independent reason that defendants were not "city contractors" against whom a false claim action could be brought.

¶ 35　　　　　　　　　　　　III. CONCLUSION

¶ 36　For the foregoing reasons, the judgment of the circuit court dismissing Walton's complaint with prejudice is affirmed.

¶ 37　Affirmed.

---

*City of Chicago v. Prog Leasing, LLC*, 2023 IL App (1st) 220714

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-9976; the Hon. Michael F. Otto, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Ruth I. Major, of Law Offices of Ruth I. Major, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellee. |

---