ROBERT G. HAYWOOD, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. SUPERIOR BANK F S B *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—92—0556

Opinion filed April 16, 1993.

Schiff, Hardin & Waite, of Chicago (Marcus A. Martin, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (William G. Swindal, Peter D. Sullivan, and Joshua G. Vincent, of counsel), for appellee Superior Bank F S B.

Ray H. Rittenhouse and Edward J. Malek, both of Rittenhouse & Tamillow, of Chicago, for appellee Vanguard Management Corporation.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Robert G. Haywood appealed the judgment of the circuit court denying his request for class certification of the group of plaintiffs currently or formerly residing in the Green Brier or Commodore apartment buildings, who had entered into rental agreements with either defendant Vanguard Management or defendant Superior Bank pursuant to which the defendants received a security deposit for a period of at least six months, without paying interest on such security deposit within 30 days after the end of each 12-month period as statutorily required. Plaintiff also appealed the court's denial of his individual claim as well as its determination that he, personally, lacked standing to bring this action and could not act as a class representative, because he had entered into an accord and satisfaction with defendants. For the reasons which follow, we reverse the judgment of the circuit court as to both the certification of the class, plaintiff's individual claim and his standing as class representative.

Plaintiff Haywood was a tenant in a rental apartment unit at the Green Brier building located at 559-561 West Surf Street, Chicago, Illinois, from May 1, 1988, until April 30, 1990. Defendant Superior Bank owned approximately 40 apartment units at the Green Brier, and approximately 116 units in the Commodore building located across the street. Defendant Vanguard Management was Superior Bank's property management agent with respect to the aforementioned properties. Haywood paid Vanguard a security deposit of $795 at the time he entered into a lease with Vanguard in May 1988. When Haywood's rent was increased at the end of the first one-year term, he paid an additional security deposit of $40. Neither Superior Bank nor Vanguard Management paid Haywood the 5% annual interest on his security deposit within 30 days after the end of his first-year rental period in May 1989, as required by both the Security Deposit Interest Act (Ill. Rev. Stat. 1989, ch. 80, pars. 121, 122) and section 5—12—080(c) of the residential landlord and tenant ordinance of the Municipal Code of the City of Chicago (Chicago Municipal Code §5—12—080(c) (1989)). However, in May 1990, when plaintiff vacated the apartment, Vanguard sent him a check for $711.50, which represented the security deposit at issue, plus accrued interest, but less cleaning charges. Although plaintiff admits in his complaint that he "strenuously objected" to the amount of this check, he nevertheless cashed it. Six months later, he filed this lawsuit on behalf of all former and current tenants, who, like himself, had allegedly been deprived of the

yearly payments of security deposit interest by defendants, Superior Bank and Vanguard Management.

The prerequisites for the maintenance of a class action are as follows:

"(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." (Ill. Rev. Stat. 1989, ch. 110, par. 2—801.)

Only the second and third requirements are at issue in the case at bar. Certification of a class is within the sound discretion of the trial court, and such determination will be disturbed on review only if there is an abuse of discretion or if impermissible legal criteria are applied. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 582 N.E.2d 1362.) In the instant action, plaintiff maintains that the trial court relied on impermissible legal criteria by using the common question of law and fact analysis in *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565, *Rodmaker v. Johns Holding Co.* (1990), 205 Ill. App. 3d 520, 563 N.E.2d 1175, and *Gutansky v. Advance Mortgage Corp.* (1981), 102 Ill. App. 3d 496, 430 N.E.2d 122. Plaintiff maintains that these analyses are inopposite and instead relies on the authority provided by another line of cases: *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478; *Slimack v. Country Life Insurance Co.* (1992), 227 Ill. App. 3d 287, 591 N.E.2d 70; and *Purcell & Wardrope Chartered v. Hertz Corp.* (1988), 175 Ill. App. 3d 1069, 530 N.E.2d 744.

In *McCabe*, the Illinois Supreme Court considered the common question of law and fact requirement as a prerequisite for the maintenance of a class action. This case involved a group of drug users who had been convicted under the 1969 Illinois Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—49.1) for the sale, possession, or control of marijuana. This Act had subsequently been found unconstitutional as applied to marijuana users. Additionally, it had been determined that all those convicted under the Act had a right to the expungement of their convictions and the return of any money and court costs attributable to those convictions. *McCabe* attempted to bring a class action on behalf of a class of persons from Champaign

County convicted for violations of this act. The *McCabe* court found that since the only common questions at issue were the statute's constitutionality and the recovery rights of persons convicted under it and that these had already been adjudicated in prior cases, there were no predominant questions left to decide by certifying a class of wrongfully convicted drug users.

In *Gutansky*, which relied on *McCabe*, plaintiffs attempted to bring a class action to recover statutory penalties for a mortgagee's failure to execute and record releases of mortgages within 30 days of the satisfaction of the underlying debt as required by law. The *Gutansky* court held that under the legislation concerning mortgage releases, the right of the parties similarly situated to those plaintiffs to recover under the statute was settled beyond a reasonable doubt, as defendants in that case had waived the issue of the validity of the applicable statute. Therefore, all that remained to be determined was whose mortgages were not timely released and the amount of attorney fees to be awarded in addition to the statutory penalty. On this basis, the *Gutansky* court determined that there were no common issues of law or fact and denied class certification.

Likewise in *Rodmaker*, the appellate court[1] determined that since the validity of the statute at issue (one which regulated a creditor's serving of notice before pursuing a wage assignment) was not in doubt, the rights of the persons protected under the statute to proceed upon easy proof of a statutory violation was clear. The *Rodmaker* court found that because of the absolute nature of the liability, the common question would be one of "easy decision" and "would not seem to predominate." In making its decision, the *Rodmaker* court also considered the fact that additional plaintiffs' claims for compensatory damages would require individual proof that would complicate any other common questions.

Plaintiff's contention that the trial court incorrectly relied on the *McCabe* line of cases incorporates his argument that the trial judge also incorrectly framed the common questions at issue. Plaintiff argues that although the trial judge considered two common questions (the applicability of the State and local legislations regarding security deposit interest and whether tenants were residents of the Green Brier and Commodore apartments), these were not the only common questions. The additional questions cited by plaintiff relating to defendants' liability are whether defendants have a uniform practice

---

[1]The trial court had found class certification to be appropriate.

of never paying annual interest in accordance with the Chicago ordinance and the Security Deposit Interest Act, and whether because of this practice, defendants have violated and are therefore liable under the ordinance and Act. Since no determination regarding these issues has been made, plaintiff urges that these are the common questions and that they remain unresolved. In support of the argument that a uniform business violation may be considered as a common question in class certification proceedings (despite the fact that individual damages must be resolved), plaintiff cites *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 19, 428 N.E.2d 478, 485, *Slimack v. Country Life Insurance Co.* (1992), 227 Ill. App. 3d 287, 591 N.E.2d 70, and *Purcell & Wardrope Chartered v. Hertz Corp.* (1988), 175 Ill. App. 3d 1069, 530 N.E.2d 994.

In *Gillette*, the Illinois Supreme Court affirmed certification of a class of individuals suing for the defendant's uniform scheme resulting in multiple violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). The *Gillette* plaintiffs, who constituted a nationwide group, claimed to have been deceived by defendant's promotional promise to supply a table lighter upon proof of purchase of two Gillette throwaway lighters. The *Gillette* court found that the series of essentially identical transactions between the plaintiffs and Gillette, which gave rise to their claim for table lighters, presented common questions of fact and law. It noted that the existence of individual issues, individual defenses of individual damages, multiple theories of recovery, or even the inability of some class members to obtain relief because of a particular individual factor will not, standing alone, defeat a class certification if the common questions of fact or law are otherwise predominant.

In *Purcell*, the appellate court relied on *Gillette* and ruled that because of Hertz's uniform practice of not repaying security deposits and accrued interest, certification was proper for a class of nationwide automobile lessees seeking to recover such security deposits and accrued interest, even though Hertz contended that individual questions such as varying lease terms, amounts of interest due under each lease, liability for damage to the vehicle, and excess mileage on the vehicle predominated over common questions regarding liability.

The *Slimack* court relied on both *Gillette* and *Purcell* in certifying a class of plaintiff insurance agents alleging defendants' breach of contract due to certain wrongful and uniform business practices, namely reassigning blocks of accounts from existing agents to new agents or coercing existing agents to meet certain production require-

ments not included in their practice with defendants. (*Slimack*, 227 Ill. App. 3d at 299, 591 N.E.2d at 78.) The *Slimack* court concluded that class certification was appropriate based on the common question presented by defendant's uniform scheme or plan even though defendant argued that individual issues such as the reasons for each individual reassignment predominated.

Plaintiff finally argues the applicability of our recent decision in *McCarthy v. La Salle National Bank & Trust Co.* (1992), 230 Ill. App. 3d 628, 595 N.E.2d 149, to the problem of evaluating a predominating common issue of law or fact in class certification suits. Although *McCarthy* was before the court in a different procedural posture (on the trial court's granting of defendant's section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) motion to dismiss), it is nevertheless instructive on the issue under consideration. In *McCarthy*, plaintiff sought to represent a group of defendants' current and former nondefaulting tenants who did not receive yearly interest on their security deposits. The alleged common question of law predominant among the class members was whether defendants, as a matter of consistent business practice, violated State and city laws. The alleged common question of fact was that each violation occurred in the same manner, in that defendants wilfully failed to pay interest to each tenant. In its analysis, the *McCarthy* court distinguished *McCabe, Gutansky*, and *Rodmaker* as involving situations where plaintiffs' right to recover was established beyond a reasonable doubt. It noted that the alleged common questions in the case before it were not uncontroverted notwithstanding defendants' motion to dismiss which admitted the allegations in the plaintiffs' complaint.

■ After careful consideration of all aforementioned authorities, we conclude that the trial court's analysis based on the *McCabe* line of cases is correct only to the extent of its identification of the common questions as the applicability of State and local laws regarding security deposit interest and whether tenants were residents of the Commodore and Green Brier apartments. We find this definition of the common questions to be too narrow. A more accurate delineation of the common questions confronting the tenant plaintiffs would include the issues of whether defendants followed a uniform scheme or plan of not paying annual security deposit interest and whether, in so doing, they violated State and city ordinances. Having rephrased the common questions, we are persuaded by the reasoning in *Gillette, Purcell* and *Slimack* that class certification is appropriate. Even though individual determinations as to damages will be necessitated (because of defaults, damage to premises, delinquent rents, and stat-

ute of limitations bars), the common issue of defendants' uniform statutory violation predominates. We are further persuaded of the legitimacy of this certification by the reasoning in *McCarthy*, which involved an almost identical factual situation, relied on the same case law and found certification of a tenant class appropriate. We do likewise.

■ Additionally, we disagree with the trial court's conclusion that plaintiff had entered into an accord and satisfaction with defendents thereby precluding his standing as a class representative and justifying the denial of his individual claim. (According to the trial court, an accord and satisfaction was accomplished by plaintiff's cashing the single check comprising his security deposit plus accrued interest which was received after he vacated the apartment.) In order to constitute an accord and satisfaction, the party asserting the defense must establish each of the following elements: (1) a *bona fide* dispute; (2) over an unliquidated sum; (3) consideration; (4) a shared and mutual intent to compromise the claim; and (5) execution of the agreement. (*Hrubos v. Helfrick* (1991), 220 Ill. App. 3d 787, 581 N.E.2d 180.) In the instant action, defendants failed to prove that a *bona fide* dispute existed over the amount to which plaintiff was entitled at the time he cashed Vanguard's check for $711.50, which was paid pursuant to "move-out provisions" and which represented the return of plaintiff's security deposit, plus accrued interest, less cleaning charges. Although plaintiff admittedly "strenuously objected" to the amount of the check, such objections were due to the deductions for cleaning and not for amounts owed due to defendants' failure to pay annual security deposit interest. Indeed, at the time of cashing the check at issue, the record establishes that the plaintiff was totally unaware that he was entitled to such interest and damages. Consequently, he could not have intended to compromise a claim which he did not know existed. Furthermore, there was no language in the check indicating that cashing it would extinguish defendants' responsibility to pay damages due to their failure to pay annual security deposit interest. Thus the case is distinguishable from *Schultheis v. McWilliams Electric Co.* (1991), 219 Ill. App. 3d 571, 579 N.E.2d 137, and *Quaintance Associates, Inc. v. P L M, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567, where the relevant documents expressly referred to paying or settling claims. Instead it is more similar to the recent appellate court decision in *Solomon, Helfand & Bean v. American National Bank & Trust Co.* (1993), 243 Ill. App. 3d 132, where we found that even if the check under consideration operated as an accord and satisfaction of a claim to the security deposit refund, it did

not operate to preclude the statutory claim that defendant failed to provide the refund within the time specified in the ordinance. Furthermore, the sum at issue is not unliquidated as the claimed amounts can easily be calculated using statutory formulas. For the aforementioned reasons, defendants have failed to establish all elements of an accord and satisfaction. Accordingly, we find that none existed and on this basis reverse the trial court's denial of plaintiff's individual claim as well as its determination that he lacked standing to represent the class.

Reversed and remanded for further action consistent with the views expressed herein.

Reversed and remanded.

MURRAY and COUSINS, JJ., concur.