2025 IL App (1st) 241447-U

FIRST DIVISION
May 5, 2025

No. 1-24-1447

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LAUREN SUMMERS and ALANA NOVOSAD, | ) | |
| | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 2022M1113531 |
| JOSEPH NYRE, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Aileen Bhandari and |
| | ) | Scott Norris, |
| | ) | Judges Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**O R D E R**

¶ 1    *Held*: The circuit court properly dismissed the plaintiffs' claims alleging violations of the Chicago Residential Landlord and Tenant Ordinance (Chicago Municipal Code § 5-12-080) with respect to their security deposit, where the parties previously entered into an accord and satisfaction to release each other from "any and all" such claims.

¶ 2    The plaintiffs, Lauren Summers and Alana Novosad, appeal from the circuit court's order

dismissing their cause of action alleging violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-080) against their former landlord, the defendant, Joseph Nyre. See 735 ILCS 5/2-619(a) (West 2020). The plaintiffs assert that the circuit court erred when it found that their RLTO claims were barred because of an accord and satisfaction. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The record before us reveals the following relevant facts and procedural history. On July 11, 2022, the plaintiffs filed a verified complaint alleging violations of the RLTO (Chicago Municipal Code § 5-12-080) against, their landlord, the defendant Nyre.[1] The plaintiffs alleged that in June 2017 they entered into a written lease agreement with the defendant to rent the single-family unit condominium located at 40 E. Cedar St., Unit 4D, in Chicago, Illinois 60611 (hereinafter the property). Pursuant to the written lease agreement, the plaintiffs paid the defendant a security deposit of $2,950 (which included a $300 pet security deposit). The plaintiffs rented the property for over four years, during which, the defendant did not pay them any interest on their security deposit.

¶ 5      The plaintiffs' tenancy ended on June 30, 2021, prior to which they vacated the premises. The plaintiffs alleged that they did not damage the property and instead left it in good condition, except for normal wear and tear. The plaintiffs averred that on July 27, 2021, the defendant sent them an email with a list of alleged damages to the property, indicating that he was going to retain their entire security deposit to cover those damages and that in addition, the plaintiffs owed him $830.22. According to the plaintiffs, no receipts, paid or otherwise, for any of these alleged repairs

---

[1]The complaint initially named Janet Ratcliff as another defendant, alleging that she owned the property and was therefore another landlord under the RLTO. However, Ratcliff was subsequently dismissed from the case after she provided an affidavit, attesting that she was not an owner of the property during the relevant time period. She is also not a party to this appeal.

or replacements were attached to the defendant's email.

¶ 6    The plaintiffs complained to the defendant about the amount he claimed as damages. However, "believing they had no choice but to accept only the partial return of their security deposit or face the prospect of debt collectors attempting to collect the full trumped-up amount claimed" by the defendant, the plaintiffs "reluctantly agreed" to the return of only $1,069.78 of their security deposit.

¶ 7    The plaintiffs acknowledged that prior to accepting this amount, on July 28, 2021, the defendant sent them an email stating, in relevant part:

> "Per our conversation this afternoon, I understand we have reached a good faith resolution specific to damages, repairs and your security deposit(s) for [the property.] After discussing the itemized list of damages, repairs and associated expenses *** we reached a mutually agreeable, good faith resolution to reduce the amount due from $3,900.00 to $2,000.00."

The email further stated: "Confirmation response via email will constitute acceptance of the terms and release each party of any and all associated claims."

¶ 8    The plaintiffs, however, alleged that at the time they entered into this agreement with the defendant, they were "unaware of their rights" under the RLTO. Later, after consulting with an attorney, the plaintiffs learned that during their tenancy the defendant had violated the RLTO in several respects. Specifically, the plaintiffs learned that the defendant violated section 5-12-080 of the RLTO: (1) by not paying them annual interest on their security deposit (see Chicago Municipal Code § 5-12-080(c)) [2]; and (2) by not timely providing them with receipts for amounts deducted

_____

[2] Pursuant to this section "a landlord who holds a security deposit *** for more than six months shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate determined in accordance with Section 5-12-081 for the year in which the rental agreement was entered into." Furthermore, "[t]he landlord shall within 30 days after the end of each 12-month period, pay to the tenant any interest, by cash or credit to be applied to the rent due." Chicago Municipal Code § 5-12-080(c).

from their security deposit for alleged damages to the property (*Id*. § 5-12-080(d)(2)).[3]

¶ 9    Accordingly, while the plaintiffs acknowledged that they "might have" entered into an accord and satisfaction with the defendant in regard to the withheld amount of their security deposit, they asserted that this agreement did not cover any violations of section 5-12-080 of the RLTO (*Id*. § 5-12-080). The plaintiffs therefore sought statutory penalty damages for the RLTO violations in the amount of $5,900, which is equivalent to two times their security deposit (*Id*. § 5-12-080(f))[4] and reimbursement of their court costs and attorneys' fees (*Id*. §5-12-180; 735 ILCS 5/5-108 (West 2020)).[5]

¶ 10    In support of their verified complaint, the plaintiffs only attached their written lease agreement with the defendant. Relevant to this appeal, subsection 8 of the "Covenants and Agreements" section of that lease, titled "Security Deposit," provides, *inter alia*, that "[t]he Security Deposit shall be held in a Federally Insured interest bearing account in a bank, savings and loan association, or other financial institution located in the State of Illinois," and that "[i]nterest on the Security Deposit shall be paid at the rate set by the City Comptroller for security

---

[3] Pursuant to this section "the landlord shall, within 45 days after the date that the tenant vacates the dwelling *** return to the tenant the security deposit or any balance thereof and the required interest thereon; provided, however, that the landlord, *** may deduct from such security deposit or interest due," *inter alia*, "[a] reasonable amount necessary to repair any damage caused to the premises by the tenant[,]*** reasonable wear and tear excluded." Furthermore, "[i]n case of such damage, the landlord shall deliver or mail to the last known address of the tenant within 30 days an itemized statement of the damages allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching copies of the paid receipts for the repair or replacement. If estimated cost is given, the landlord shall furnish the tenant with copies of paid receipts or a certification of actual costs of repairs of damage if the work was performed by the landlord's employees within 30 days from the date the statement showing estimated cost was furnished to the tenant." Chicago Municipal Code § 5-12-080(d)(2).

[4] Section 5-12-080(f) of the RLTO specifically provides that: "[i]f the landlord *** fails to comply with any provision of Section 5-12-080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at five percent." Chicago Municipal Code § 5-12-080(f).

[5] Section 5-12-180 of the RLTO provides that "[e]xcept in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available" under the RLTO, "shall be entitled to all court costs and reasonable attorney's fees." Chicago Municipal Code § 5-12-180.

deposits held more than six months and may be paid to Tenant either directly or by credit in the form of rent reduction."

¶ 11    On March 28, 2023, the defendant filed a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2020)). Therein he raised the affirmative defense of accord and satisfaction and argued that dismissal was warranted because the agreement entered into by the parties on July 28, 2021, encompassed "any and all associated claims" regarding their dispute over "property damage, return of the security deposit, and security deposit interest." The defendant argued that the plaintiffs' agreement to the return of less than their full security deposit was therefore a settlement of any and all RLTO violation claims.

¶ 12    In support of his motion to dismiss, the defendant attached, his affidavit, as well as copies of the email exchanges between the parties that occurred on July 27 and 28, 2021.

¶ 13    In his affidavit, the defendant attested that after the plaintiffs' tenancy ended, he inspected the property and discovered damage beyond reasonable wear and tear (including damage to the walls and the wood floors in the living room and both bedrooms). After the plaintiffs disputed these damages, the defendant scheduled a phone conversation with them for July 27, 2021. According to the defendant's affidavit, the purpose of this call was to discuss "damage to the property, the return of the security deposit and interest on the deposit." On July 27, 2021, the defendant spoke only to plaintiff Summers, because plaintiff Novosad texted earlier that day indicating that she had a conflict. Immediately after that phone conversation, the defendant emailed the plaintiffs outlining the deposit, interest on the deposit, damage to the property, and certain property damage for which he was not seeking money.

¶ 14    That July 27, 2021, email, whose subject is "Deposit and damages exceeding normal wear and tear" is attached to the motion to dismiss. In relevant part, it first thanks the plaintiffs for

"being good renters during the past few years." It then notes that the defendant was "pleased to speak with Ms. Summers earlier today" and that Ms. Novosad had indicated "a conflict and suggested [they] meet without her." According to the email, "[t]he purpose of the [phone] call was to share expenses associated with repairs exceeding normal wear and tear and to seek an amicable, good faith resolution for all concerned parties." Nonetheless, "while it appeared [the parties] had reached a good faith resolution" during that phone call, "unfortunately[,] subsequent text messages suggest[ed] this [wa]s no longer the case." Consequently, the defendant was now writing to "summarize initial deposits, interest earned, and funds withheld from the security deposit" for the property.

¶ 15    The defendant's email then noted that the initial security deposits were $2,650 and $300 respectively, and that each deposit annually earned accrued interest per the Chicago Comptroller's published interest rate (of 0.010%) bringing the balance of the security deposit for the entire rental period (from 2018 through 2021) to $3,069.78. The email provided a chart of the "security deposit summary" showing how the original $2,950 sum grew annually to $3,069.78.

¶ 16    The email then listed the cost of the "repairs to damages exceeding normal wear and tear," including: (1) $2,400 for the repair and repainting of the scratched and damaged walls in the living room and both bedrooms; (2) $1,500 for the repair of damaged wood floors in the living room and both bedrooms; and (3) several other repairs for which the defendant was not seeking money (including repairs to the closet doors, kitchen cabinets, and the shelf in the master bedroom, and replacement of the toilet paper dispenser).

¶ 17    The defendant's email next asserted that because the total cost of the repairs amounted to $3,900, and the security deposit, with interest, totaled $3,069.78, the plaintiffs owed him $830.22. The defendant therefore "kindly asked" the plaintiffs to forward the payment of said amount to

him within 30 days.

¶ 18    In his affidavit, the defendant further attested that after he sent this email, the plaintiffs objected to his calculations and disputed owing any additional sums. According to the defendant, on or about July 28, 2021, he had another phone call conversation with the plaintiffs, during which they discussed "the security deposit, claims related to the security deposit, damage to the property and a mutually agreeable resolution to the parties' dispute." At the end of this phone call, the parties "agreed that in full satisfaction of all claims" the defendant would return to the plaintiffs the sum of $1,069.78, from their original security deposit and that the plaintiffs would not owe him any money.

¶ 19    The defendant attested that after this phone call, on July 28, 2021, he emailed the plaintiffs to memorialize their agreement. That email, which was also attached to the motion to dismiss, included the accord and satisfaction language noted in the plaintiffs' complaint. Specifically, the email stated: "Per our conversation this afternoon, I understand that we have reached a good faith resolution specific to damages, repairs and your security deposit for [the property]." The email next noted that "[a]fter discussing the itemized list of damages, repairs and associated expenses" specified in the attached July 27, 2021, email, the parties had "reached a mutually agreeable, good faith resolution to reduce the amount" owed by the plaintiffs from $3,900 to $2,900. Accordingly, under this "[r]evised [r]econciliation [b]ased on [the] [r]esolution [r]eached [e]arlier" that day, the parties agreed that the balance due from the defendant to the plaintiffs was $1,069.78. The email next stated that a "[c]onfirmatory response via email" from the plaintiffs would "constitute acceptance of the terms and release each party of any and all associated claims." In addition, upon such confirmation, the funds would be equally distributed between the two plaintiffs, with each

receiving $534.89.

¶ 20    According to the defendant's affidavit, after he sent this email on July 28, 2021, he received individual emails from both plaintiffs agreeing to the terms. Those emails, which were also attached to the motion to dismiss, reveal that plaintiff Summers wrote: "I am in agreement, Best Lauren," while plaintiff Novosad wrote: "I am in agreement – thank you, Joe."

¶ 21    In his affidavit, the defendant next attested that consistent with the parties' agreement, he paid each plaintiff $534.89. Both plaintiffs accepted the payments, and at no time stated that they were unsatisfied with the negotiated agreement. In addition, they never communicated to the defendant (either verbally or in writing) that they were under "duress" or felt threatened or compelled to enter into this agreement.

¶ 22    On May 17, 2023, the plaintiffs filed their response to the defendant's section 2-619 motion to dismiss. Therein, the plaintiffs reiterated that while their reluctant agreement to the dollar amount of the original security deposit to be returned to them constituted an accord and satisfaction regarding the return of that security deposit, the agreement did not relieve the defendant of his liability for his *previous*, and to the plaintiffs unknown, violations of section 5-12-080 of the RLTO (*i.e*., the defendant's failure to annually pay them interest on their security deposit and his failure to timely provide them with receipts for the cost of repairs taken out of that deposit). The plaintiffs asserted that there could not have been an accord and satisfaction with respect to the RLTO violations, because in reaching the accord and satisfaction, the parties never raised or discussed the RLTO, and the amount of statutory penalty damages that they now sought was liquidated and was never in controversy. In support of their response, the plaintiffs did not attach a counter affidavit. Instead, they noted that there were no facts alleged by the defendant in his affidavit that were germane to the issue of accord and satisfaction, which they needed to refute to defeat his

motion to dismiss.

¶ 23    After a hearing, on December 20, 2023, the circuit court granted the defendant's motion to dismiss with prejudice. The plaintiffs subsequently filed a motion to reconsider, which was denied. The plaintiffs now appeal.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, the plaintiffs assert that the circuit court erred in granting the defendant's motion to dismiss on the basis of an accord and satisfaction. For the following reasons, we disagree.

¶ 26    A motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/2-619 (West 2020)) admits the legal sufficiency of a complaint and all well-pleaded facts and reasonable inferences therefrom but asserts an affirmative matter appearing outside of the complaint that bars or defeats the cause of action. *Progressive Northern Insurance Company v. Ayala*, 2021 IL App (1st) 200384, ¶ 13; see also *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55; *Keen v. Wal-Mart Stores, Inc.*, 235 Ill. 3d 351, 361 (2001). When ruling on a section 2-619 motion to dismiss, the circuit court must construe all the pleadings and supporting documents in the light most favorable to the nonmoving party (*Sandholm*, 2012 IL 111443, ¶ 55) and should grant the motion only "if the plaintiff can prove no set of facts that would support a cause of action." (*Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8). The critical inquiry is "whether the existence of a genuine issue of material fact should have precluded the dismissal, or absent such an issue of fact, whether dismissal [wa]s proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review the circuit court's grant of a section 2-619 motion to dismiss *de novo*. *Ayala*, 2021 IL App (1st) 200384, ¶ 13; see also

*Sandholm*, 2012 IL 111443, ¶ 55.

¶ 27    In the present case, the defendant's motion to dismiss was based on subsection 2-619(a)(6), which encompasses the affirmative defense of "accord and satisfaction" and provides that dismissal is proper if the claims set forth in the plaintiffs' complaint have been released or satisfied. See *Ayala*, 2021 IL App (1st) 200384, ¶ 13; 735 ILCS 5/2-619(a)(6) (West 2020). "An accord and satisfaction is a contractual method of discharging a debt or claim." *Saichek v. Lupa*, 204 Ill. 2d 127, 135 (2003). The accord is the parties' actual agreement while the satisfaction is the performance or execution of the agreement. *Id*. An accord and satisfaction presumes that the parties dispute an amount owed but agree to something less than that amount in order to settle their dispute. *Id*. at 136. In order for the parties to reach an accord and satisfaction, "there must be: (1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Id*. at 135.

¶ 28    As the proponent of the accord and satisfaction defense, the defendant bears the burden of proving all its elements. *In Estate of Castro*, 289 Ill. App. 3d 1071, 1077 (1997). However, once the defendant satisfies this initial burden by supporting his defense with an affidavit or other evidentiary material not apparent on the face of the complaint, the burden shifts to the plaintiffs to establish that the defense is unfounded or requires the resolution of a material fact. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 37; see also *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003); *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 116. Dismissal is proper if the plaintiffs "fail[] to carry the shifted burden of going forward." *Doe*, 2015 IL App (1st) 133735, ¶ 37 (citing *Epstein*, 178 Ill. 2d at 383).

¶ 29    In the present case, the plaintiffs contend that the defendant failed in his initial burden of

establishing two of the requisite elements for an accord and satisfaction and that therefore the dismissal of their RLTO claims was improper. Specifically, the plaintiffs assert that the defendant failed to show that they had a shared and mutual intent to compromise the RLTO claims and that there was an unliquidated sum of money in controversy. For the following reasons, we disagree.

¶ 30    We begin with the parties shared and mutual intent to compromise. Because an accord and satisfaction is contractual in nature, to determine the intent of the parties, it is necessary to examine the language of the relevant documents. *Holman v. Simborg*, 152 Ill. App. 3d 453, 456 (1987); *Suburban Bank of Hoffman-Shcaumburg v. Bousis*, 144 Ill. 2d 51, 59 (1991) (holding that a written agreement is presumed to express mutual intent absent clear and convincing evidence to the contrary).

¶ 31    In the present case, for the following reasons, and construing the pleadings in the light most favorable to the plaintiffs, we find that the parties' email exchanges from July 27 and 28, 2021, clearly establish that they shared a mutual intent to release each other from "any and all claims" associated with the security deposit, including the RLTO claims.

¶ 32    In this respect, the July 27, 2021, email sent by the defendant to the plaintiffs reveals that after the plaintiffs disputed the necessary "repairs exceeding normal wear and tear" to the property, in a phone call the defendant and plaintiff Summers unsuccessfully attempted to "seek an amicable, good faith resolution for all concerned parties." Subsequently, the defendant provided the plaintiffs with an itemized chart of "initial [security] deposits, interest earned, and funds withheld from the security deposit" and demanded that the plaintiffs pay him an additional $830.22 for costs of repairs exceeding that deposit, with interest.

¶ 33    The subsequent email sent by the defendant on July 28, 2021, reveals that after a second conversation, the parties "reached a good faith resolution specific to damages, repairs and [the

11

plaintiffs'] *security deposit*." (Emphasis added.) That email specified that "[a]fter discussing the itemized list of damages, repairs and associated expenses" listed in the attached July 27, 2021, email, the parties had "reached a mutually agreeable, good faith resolution to reduce the amount[s]" owed by the plaintiffs to the defendant and had agreed that the balance due from the defendant to the plaintiffs was $1,069.78. The email then explicitly stated that a "[c]onfirmatory response via email" from the plaintiffs would "*constitute acceptance of the terms and release each party of any and all associated claims*." (Emphasis added).

¶ 34    On that same day, both plaintiffs sent confirmatory emails to the defendant explicitly acknowledging their agreement to the terms outlined in his July 28, 2021, email. Moreover, it is undisputed that the defendant subsequently sent the plaintiffs $1,069.78 and that they accepted his payment.

¶ 35    Under this record and construing the pleadings in the light most favorable to the plaintiffs, we are compelled to conclude that the parties' emails clearly reveal a shared and mutual intent to release each other from "any and all associated claims" related to the "security deposit." See *e.g.*, *Quaintance Associates, Inc., v. PLM, Inc.*, 95 Ill. App. 3d 818 (1981) (holding that the plaintiff's acceptance of a payment, which was accompanied by a letter stating the defendant would only pay 60% of the disputed amount and considered the matter closed, revealed that the plaintiff understood that the check was offered as a compromise and settlement); *MKL Pre-Press Electronics/MKL Computer Media Supplies, Inc. v. La Crosse Litho Supply, L.L.C.*, 361 Ill. App. 3d  872 (2005) (holding that the parties' shared mutual intent could be inferred from their correspondence).

¶ 36    Because it is undeniable that the statutory damages that the plaintiffs now seek stem from claims related to their security deposit (*i.e.*, the defendant's failure to pay interest on that deposit

or timely provide them with itemized receipts for repairs subtracted from that deposit), we must conclude that the accord and satisfaction necessarily encompass the RLTO violations.

¶ 37    This conclusion is further supported by the defendant's uncontradicted affidavit, attached in support of his motion to dismiss, which plainly states that the parties' email exchanges were intended to memorialize their July 28, 2021, phone conversation, during which they discussed "the security deposit, *claims related to the security deposit*, damage to the property and a mutually agreeable resolution to the parties' dispute." (Emphasis added.) According to the defendant's uncontroverted affidavit, at the end of this phone call, the parties "agreed that *in full satisfaction of all claims*" (emphasis added) the defendant would return to the plaintiffs the sum of $1,069.78, from their original security deposit and that the plaintiffs would not owe him any money.

¶ 38    The plaintiffs nonetheless assert that because their verified complaint alleged that at the time they entered into this agreement, they were unaware of any RLTO violations that the defendant had committed during their four-year tenancy, they could not have intended to compromise any of those now alleged claims. Just as they did before the circuit court, in support, the plaintiffs rely on the decisions in *Haywood v. Superior Bank FSB*, 244 Ill. App. 3d 326 (1993), and *Solomon v. American National Bank and Trust Co.*, 243 Ill. App. 3d 132 (1993). For the following reasons, we disagree and find those cases inapposite.

¶ 39    In *Haywood*, the plaintiff, who was a tenant of an apartment building owned by the landlord-bank sought class certification for a class action lawsuit alleging that the landlord violated section 5-12-080(c) of the RLTO by failing to pay yearly interest on held security deposits. *Haywood*, 244 Ill. App. 3d at 327. After the plaintiff vacated his apartment, without further notice, discussion or any input from the plaintiff, the bank sent the plaintiff a $711.50 check "for the security deposit at issue, plus accrued interest, but less cleaning charges." *Id*. In his complaint the

plaintiff alleged that although he " 'strenuously objected' to the amount of this check, he nevertheless cashed it." *Id*. Six months later, the plaintiff filed a lawsuit on behalf of all former and current tenants, who like himself, alleged that "they had been deprived of the yearly payments of security deposit interest by the landlord." *Id*. at 328. The circuit court dismissed the plaintiff's individual claim and refused to certify the class, holding that the plaintiff had entered into an accord and satisfaction with the landlord when he deposited the landlord's check. *Id*.

¶ 40    On appeal, we reversed, holding, among other things, that there was no accord and satisfaction. *Id*. In that respect, we explained that "[a]lthough plaintiff admittedly 'strenuously objected' to the amount of the check, such objections were due to the deductions for cleaning and not for amounts owed due to defendant's failure to pay annual security deposit interest." *Id*. at 332. Moreover, the record established that "at the time of cashing the check *** the plaintiff was totally unaware that he was entitled to such interest and damages." *Id*. "Consequently, he could not have intended to compromise a claim which he did not know existed." *Id*.

¶ 41    Unlike in *Haywood*, where the plaintiff did not owe the landlord any money, was unaware of any claims regarding his security deposit and merely deposited the check after it was unilaterally sent to him by the bank, here, the parties disputed, negotiated and ultimately agreed to a resolution of the security deposit claims arising from the plaintiffs' damage to the defendant's property. The July 27 and 28 emails between the parties clearly establish that the security deposit, including the accrued interest on that deposit, were repeatedly discussed, and that the final resolution reached was intended to absolve all parties of "any and all claims" related to that security deposit. Accordingly, *Haywood* does not apply.

¶ 42    *Solomon* is similarly distinguishable. In that case, after the plaintiffs-tenants vacated the property, the landlord sent them a letter advising them that their security deposit would be returned

"minus deductions for late charges and the cost of cleaning the refrigerator." *Solomon*, 243 Ill. App. 3d at 133. The landlord subsequently issued a check to each tenant in the amount of $452.33. *Id*. Each check included the following language: "S.D. 281-A. pd. in full" and "Security deposit pd. in full." Both tenants crossed out the above quoted language and cashed their checks. *Id*. Subsequently, through their attorney, the tenants informed the landlord that they disputed his calculations and demanded payment of an additional $1,350 plus interest under the RLTO. *Id*.

¶ 43     After the tenants filed suit against the landlord, the parties filed cross-motions for summary judgement, with the landlord contending that the cashed checks constituted an accord and satisfaction and therefore barred the plaintiffs' claims. *Id*. at 134. The circuit court agreed with the tenants and concluded that there was no accord and satisfaction. *Id*.

¶ 44     On appeal, we affirmed the judgment of the circuit court. *Id*. at 135. In doing so, we recognized that an accord and satisfaction is contractual in nature and looked to the language in the documents to discern the parties' intent. *Id*. We found that although the language in the checks issued by the landlord referred to the "security deposits being paid in full," it did not mention anything about "the pay[ment] or settling of *claims*." We therefore held that the landlord did not intend that cashing the checks would extinguish all the tenants' claims based on the landlord's failure to refund the security deposit. *Id*.  As we explained, "even if the check[s] operated as an accord and satisfaction of *** claim[s] to the security deposit refund, [they] did not operate to preclude the statutory claim[s]" regarding the landlord's "fail[ure] to provide the refund within the time specified in the ordinance." *Id*.

¶ 45     Unlike in *Solomon*, where there was neither a dispute nor communication between the landlord and tenants prior to the landlord issuing the tenants the security deposit checks, here the parties disputed, discussed and agreed upon the amount of security deposit owed to the plaintiffs

before accepting any payment from the defendant. Moreover, unlike in *Solomon*, where the checks issued contained no "release of claims" language, in the present case, the July 28, 2021, email, memorializing the parties' agreement included explicit language releasing all parties from "any and all associated claims" related to the security deposit. Accordingly, *Solomon* has no bearing on the outcome of this case.

¶ 46    The plaintiffs next assert that regardless of any mutual intent, the defendant cannot establish an accord and satisfaction because their dispute was not over an "unliquidated sum." In this respect, the plaintiffs point out that the RLTO damages that they now seek are defined by statute as twice the security deposit and are therefore necessarily an uncontroverted and liquidated mathematical sum. See Chicago Municipal Code § 5-12-080(f). In support, they cite *Landis v. Mark Realty, L.L.C.,* 235 Ill. 2d 1, 13-14 (2009). We disagree and find that case inapposite.

¶ 47    At the outset, we note that *Landis* did not involve an accord and satisfaction. Instead, in that case, our supreme court was solely tasked with determining whether section 5-12-080(f) of the RLTO "imposes a 'statutory penalty' within the meaning of section 13-202 of the [Civil Procedure] Code [(735 ILCS 5/13-202 (West 2004))]" such that the plaintiffs RLTO claims were barred by a two-year statute of limitations. *Landis,* 235 Ill. 2d at 13. Affirming both lower courts, our supreme court held that section 5-12-080(f) was a "statutory penalty" because it "imposes automatic liability for a violation of its terms, sets forth a predetermined amount of damages, and imposes liability regardless of plaintiffs' actual damages." *Id*. at 15. In addition, "the return of the security deposit itself is not included in the statutory damages available under" the provision. *Id*. at 14. Accordingly, our supreme court concluded that the two-year statute of limitations applied. *Id*. at 13-15.

¶ 48    *Landis* is completely inapplicable to the present case. *Landis* nowhere discussed whether

statutory penalties pursuant to section 5-12-080(f) constitute an unliquidated sum for purposes of an accord and satisfaction. Nor, contrary to the plaintiffs' position, did that decision hold that because of the nature of the statutory penalty, willing parties could never reach an accord and satisfaction releasing each other from liability for such statutory penalties under the RLTO. We reject the plaintiffs' invitation to read *Landis* as an endorsement of an interpretation of law that would encourage litigation over negotiation and settlement.

¶ 49    Instead, we find that, when construed in the light most favorable to the plaintiffs, the pleadings before us reveal that in reaching the accord and satisfaction the parities disputed an unliquidated sum. See *Ayala*, 2021 IL App (1st) 200384, ¶ 13 ("a sum is unliquidated where the amount is not easily calculable by reference to specific data or a precise mathematical formula, or it rests on opinion only."). Specifically, the parties disagreed about the cost of repairs for damages to the property that the defendant should retain from the plaintiffs' security deposit. During their negotiations, that amount changed from the defendant seeking to retain the entire $2,950 original security deposit to the defendant requesting an additional $830.22 on top of that original deposit plus interest ($3069.78). It is undisputed that the parties' opinions as to the cost of repairs for damages to the property varied greatly, and that to settle the matter, the plaintiffs ultimately accepted the return of only a portion of their security deposit ($1,069.78).

¶ 50    To the extent that the plaintiffs now attempt to argue that when they negotiated these terms, they were unaware that under section 5-12-080(f) they were also entitled to twice their security deposit ($5,900) because in the past four years, the defendant had failed to pay them yearly interest on that deposit (totaling $119.78), we feel very little sympathy.[6] "When a right to sue is based upon a statute or a public record, Illinois courts have charged a party with constructive knowledge"

---

[6] While not articulated in the plaintiffs' complaint, this information would have presumably given the plaintiffs more leverage in negotiating the amount of security deposit to be returned to them.

of the relevant law (*Wells Fargo, N.A. v. Nguyen*, 2024 IL App (3d) 230253 ¶ 33) because "[i]t is a common maxim that ignorance of the law is no excuse." *Clark v. Lay*, 2022 IL App (4th) 220101, ¶ 45; *People v. Hollins*, 2012 IL 112754, ¶ 34. Accordingly, what matters is not "what [the plaintiffs] actually knew but also what they could have known 'by the use of the means of information within [their] reach with the vigilance the law requires of [them].' " *Nguyen*, 2024 IL App (3d) 230253 ¶ 33 (quoting *Pyle v. Ferrel*, 12 Ill. 2d 547, 554 (1958)).

¶ 51    In the present case, the plaintiffs' own lease states that their security deposit will accrue interest at a rate determined by the City Comptroller and that after six months of their tenancy the defendant "may" pay them this interest either directly or by credit in the form of a rent reduction. As such, from the start, the plaintiffs were on notice that they "may" be entitled to receive interest on their security deposit and should have, in the very least, inquired about the repercussions of the defendant not doing so. A simple online search of the RLTO would have revealed the statutory penalties they now seek. The plaintiffs' rush to accept a partial payment of their security deposit, without first doing any legal research or consulting an attorney, so as to avoid facing "the prospect of debt collectors attempting to collect the full trumped-up amount" claimed by the defendant for their damages to his property, may have been a poor choice, but one that has inopportunely bound them.

¶ 52                                III. CONCLUSION

¶ 53    For these reasons, construing the pleadings in the light most favorable to the plaintiffs, we find that there was an accord and satisfaction, and that dismissal of the plaintiffs' claims was proper.

¶ 54    Affirmed.